















RXC   1/10/02   11:38

3:02-CV-00056   BROWER V. MOTOROLA INC

*1*

*NTCREM.*

ORIGINAL

1  WRIGHT & L'ESTRANGE
   Robert C. Wright (051864)
2     John H. L'Estrange (049594)
  701 B Street, Suite 1550
3  San Diego, California 92101
  (619) 231-4844
4  (619) 231-6710 (facsimile)

5  Attorneys for Defendant Motorola, Inc.

6

7

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10  GIBB BROWER and KIM BROWER,    )  Case No. 02 CV 0056 K (JFS)
                             )
11            Plaintiffs,       )  **NOTICE OF REMOVAL OF ACTION**
                             )  **UNDER 28 U.S.C. § 1441(b)**
12      vs.                )
                             )  (Federal Question)
13  MOTOROLA, INC., a Delaware corporation;  )
  U.S. WEST WIRELESS, LLC, a Colorado  )
14  Corporation; U.S. WEST         )
  COMMUNICATIONS, INC., a Colorado  )
15  corporation; VERIZON COMMUNICATIONS,  )
  INC., a New York corporation; GTE   )
16  MOBILNET OF SAN DIEGO     )
  INCORPORATED, a Delaware corporation;  )
17  GTE WIRELESS SAN DIEGO LLC, a   )
  California Limited Liability corporation; SONY  )
18  ELECTRONICS INC., a Delaware corporation;  )
  CELLULAR TELECOMMUNICATIONS AND  )
19  INTERNET ASSOCIATION, a District of   )
  Columbia  corporation; CELLULAR   )
20  CARRIERS ASSOCIATION OF CALIFORNIA,  )
  a California corporation and DOES 1 through  )
21  100, inclusive,         )
                             )
22      Defendants.      )

23  ———————————————————

24               **NOTICE OF REMOVAL**

25      COMES NOW defendant Motorola, Inc. ("Motorola") and respectfully notifies the Court

26  pursuant to 28 U.S.C. section 1441 that it has this day removed this action from the Superior Court

27  of California, County of San Diego to this Court.  In support of its removal, Motorola states as

28  follows:

                                          Case No. _____

1.  Plaintiffs' First Amended Complaint adds class action allegations that parallel those asserted in other class actions that have been removed to federal court and consolidated by the Judicial Panel on Multidistrict Litigation ("JPML") in the United States District Court for the District of Maryland as *In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation,* MDL No. 1421.[1] The class action allegations newly added by the plaintiffs in this case are closely similar to the allegations in the consolidated class actions, which the JPML described as "allegations that defendants misrepresented and concealed alleged adverse health risks of wireless telephone use that could be eliminated by use of a telephone headset." JPML Order at 2. The class action allegations essentially attack the adequacy of federal standards for regulating RF emissions from wireless telephones.[2] As to the relief requested, plaintiffs, *inter alia*, now seek an injunction prohibiting any of the defendants from stating publicly that the Federal Communications Commission's (the "FCC") FCC's RF emissions regulations have any validity or that either the FCC or the Food and Drug Administration ("FDA") has found that wireless telephones are safe for human use.

2.  Accordingly, this action is now removable to federal court pursuant to 28 U.S.C. section 1441 because the First Amended Complaint could have been filed originally in this Court pursuant to the federal question jurisdiction conferred by 28 U.S.C. section 1331. To the extent that the First Amended Complaint reiterates claims of personal injury made in the original complaint, as opposed to the class action allegations first made in the amended complaint, this Court has supplemental jurisdiction over such personal injury claims pursuant to 28 U.S.C. section 1367.

## PROCEDURAL BACKGROUND

3.  The named plaintiffs, Gibb Brower and Kim Brower, filed the original complaint on April 19, 2001, in the Superior Court of the State of California, County of San Diego, entitled *Gibb Brower and Kim Brower v. Motorola, Inc., et al.,* Case No. 765987.

---

[1] The JPML entered an order transferring and consolidating the Radio Frequency ("RF") emissions cases on October 31, 2001. *See* Transfer Order (JPML Oct. 31, 2001) attached hereto as Exhibit A.

[2] Simultaneously with the filing of this removal notice, the defendants have notified the JPML that this case is a "tag-along action" within the meaning of JPML Rule 1.1. *See* Tag-Along Notice attached as Exhibit B.

Case No. _____

4.     On May 21, 2001, the defendants removed the original action to federal court based on diversity jurisdiction and federal question jurisdiction pursuant to 28 U.S.C. sections 1331, 1332(a), 1441 and 1446.  That notice was timely filed.

5.     On August 1, 2001, the plaintiffs filed a motion for leave to file a First Amended Complaint to add a non-diverse party.  On September 7, 2001, the court granted plaintiffs' leave to add a non-diverse party and ordered the parties to show cause why the case should not be remanded. The parties stipulated to remand, and on October 22, 2001, the Stipulation and Order Remanding the Case to San Diego Superior Court was entered.

6.     On December 10, 2001, plaintiffs filed their First Amended Complaint ("Compl.") attached hereto as Exhibit "C," pp. 15-62.  In the First Amended Complaint, plaintiffs now purport to represent a class consisting of all persons who purchased portable handheld cellular telephones in the State of California since August 8, 1994.  In addition, the plaintiffs have added a number of new defendants, and raised substantial questions of federal law, as further discussed below.  Because the First Amended Complaint provides substantial legal grounds for removing this action that were previously unavailable, removal is permitted under 28 U.S.C. section 1446(b) notwithstanding the prior remand of this action.

## NEW ALLEGATIONS CHALLENGING FEDERAL REGULATION

7.     As indicated, above, in their First Amended Complaint, plaintiffs, on behalf of a newly proposed class of cellular telephone users, allege, *inter alia*, that the federal regulations governing RF emissions from wireless telephones are invalid and accuse the defendants of obstructing, preventing and undermining the setting of accurate standards by the FCC.

8.     In the Telecommunications Act of 1996, Congress directed the FCC to complete its rule-making regarding RF emissions from wireless telephones.  *See* 42 U.S.C. § 4321 *et seq.*  The FCC complied with this directive, and on August 1, 1996, issued Release No. 96-326, 11 FCC Rcd. 15123, 1996 FCC LEXIS 4081 (the "First FCC Order").  The First FCC Order set RF emissions guidelines for personal wireless services facilities, including wireless telephones, stating that "*these*

3

Case No. _____

*guidelines represent a consensus view of the federal agencies responsible for matters relating to the public safety and health.*" First FCC Order ¶ 2, 168.  Having reached this federal consensus, the FCC expressed the unequivocal view that "*no further state or local regulation is warranted*." *Id.*  The FCC RF Emission Guidelines were updated and amended one year later, on August 25, 1997, by Release No. 97-303 (the "FCC Second Order").

9.    One of the federal agencies vested with both "jurisdiction by law" and by "special expertise" with respect to the health effects of RF emissions, the FDA, recently described its role in RF emissions regulation:

> FDA shares regulatory responsibilities for wireless phones with the Federal Communications Commission (FCC).  All phones that are sold in the United States must comply with FCC safety guidelines that limit RF exposure.  FCC relies on FDA and other health agencies for safety questions about wireless phones.

U.S. Food and Drug Administration – Center for Devices and Radiological Health, <u>Consumer Update on Wireless Phones</u>, ¶ 2, www.fda.gov/cdrh/ocd/mobilphone.html (July 18, 2001) ( the "July 2001 Update").  In addition to participating in the development of the FCC RF emissions requirements, the FDA has issued four "consumer updates" – the latest in July 2001 – concerning the results of its statutorily mandated evaluation of RF emissions from wireless telephones.  In each update, the FDA has concluded that "[t]he available scientific evidence does not show that any health problems are associated with using wireless phones" and that no additional regulatory action is warranted.  FDA Talk Paper No. 793, <u>Update on Cellular Phones</u> at 3 (Feb. 4, 1993); FDA, Center for Devices and Radiological Health, <u>Consumer Update on Mobile Phones</u> at 3, (Oct. 20, 1999); 66 Fed. Reg. 19,507 (April 26, 2001).

10.    Yet plaintiffs now ask this Court to invalidate the standards established by the FCC and the FDA, as well as the testing and licensing provisions related to these standards.  Indeed, plaintiffs seek damages in an amount sufficient to fund independent studies so that they may, among other things, develop their own specific absorption rate ("SAR") formula.  (Compl. at ¶62 and ¶1 of Prayer for Relief).

11.    Moreover, plaintiffs further challenge the validity of the federal standards and regulations by characterizing them as products of defendants' purported attempts to defraud the FCC

4

Case No. _____

and the FDA and interfere with the federal regulatory process. Plaintiffs also claim that defendants have failed to abide by the standards they allegedly persuaded the government to adopt and that defendants have further defrauded the federal agencies and the public by concealing that failure. These claims include allegations that defendants:

- ANSI and IEEE "neglected their duty of care in setting the SAR standard" in many ways, including using allegedly inadequate procedures to develop the SAR standard (Compl. at ¶ 30-31);

- conspired to exempt cellular telephones from compliance with the safety standards promulgated by ANSI/IEEE, including the SAR standard, because they did not meet the standards (Compl. at ¶ 32);

- used allegedly inadequate testing methods to prove compliance with the FCC SAR standard adopted in 1996 (Compl. at ¶ 33);

- introduced wireless telephones "into the market without any prior oversight from any governmental agency and without environmental or testing for adverse health consequences from electric fields, magnetic fields and electromagnetic fields generated by this equipment and its battery (Compl. at ¶ 42);

- "manipulated the research and pressured members of the ANSI Safety Standard Committee to exempt portable cellular telephones from regulation and compliance" with the standards (Compl. at ¶ 42b);

- knew about the problems with the SAR testing and still reported the SAR values "which [were] below the actual values and that such actual values exceed the SAR limits" (Compl. at ¶ 47);

- failed to inform the plaintiffs that the ANSI standards for RF radiation are inadequate to assure that cellular telephones are safe for use (Compl. at ¶ 54a);

- intentionally misrepresented to the public that the FCC's SAR standard is "true and accurate," based on the consideration of all evidence, scientific and otherwise and on the "average physical structure of all potential users, including children, and were designed to measure all" types of radiation emitted from wireless telephones (Compl. at ¶ 82a);

- intentionally misrepresented to the public that "governments and all scientists from around the world have found that [wireless telephones] are totally 'safe' and pose no risk of harm whatsoever to the user" (Compl. at ¶ 82d);

5

Case No. _____

- failed to consider relevant information when setting the SAR standard (Compl. at ¶ 103a);

- conspired to block the adoption of a safety standard until a standard which cellular telephones could meet was proposed (Compl. at ¶ 116);

- conspired to develop testing methods that are prone to error and easy to manipulate (Compl. at ¶ 117); and

- conspired to lobby, pressure, deceive and mislead various governmental agencies "(including hiring away government employees) to prevent inquiry into the risk of harm to the health of the user" (Compl. at ¶ 120).

12.     These and other allegations throughout plaintiffs' First Amended Complaint demonstrate that this action is now undeniably federal in character. Plaintiffs seek, through state law claims, to attack directly and to supplant the existing federal regulations that govern the standards and testing methods for RF emissions from wireless telephones. Although pleaded as state-law claims, plaintiffs' allegations not only invite, but compel the Court to revisit the FCC's existing regulations and licensing requirements governing RF emissions. Thus, while plaintiffs purport to assert only state-law causes of action, their First Amended Complaint makes clear that adjudication of the elements of those causes of action will require this Court to resolve substantial disputed questions of federal law.

13.     It is well established that even in cases where the causes of action asserted by a plaintiff are couched exclusively in state law terms, federal-question jurisdiction exists if resolution of those state-law causes of action depends on resolution of substantial predicate questions of federal law. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921); *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936); *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983). As the Supreme Court explained in *Franchise Tax Board*, "it is an independent corollary of the well pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board*, 463 U.S. at 22, *see also Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766 (9th Cir. 1986).

Case No. _____

14.     Numerous district courts recently have recognized federal-question jurisdiction over actions that allege solely state-law causes of action. *See, e.g., Bell v. Illinois Central Railroad Co.*, No. 01-C-2384, 2001 U.S. Dist. LEXIS 8686 (N.D. Ill. June 27, 2001) (denying motion to remand and dismissing claims of defective design asserted against locomotive manufacturer because federal government had comprehensively regulated the areas of locomotive design, manufacture, and inspection through the Locomotive Inspection Act, leaving no room for state regulation; the court found that a complaint touching on such a comprehensively regulated area is "necessarily federal in character"); *Drawho,n v. Qwest Communications Int'l, Inc.*, 121 F. Supp. 2d 554 (E.D. Tex. 2000) (denying remand motion because plaintiffs' state-law claims for trespass and slander of title necessitated resolution of questions under Federal Right of Way Act of 1875 and Pacific Railroad Act); *Frayler v. New York Stock Exchange, Inc.*, 118 F. Supp. 2d 448 (S.D.N.Y. 2000) (denying remand motion because plaintiffs' state-law claims for injurious falsehood, fraudulent deceit, and negligent misrepresentation necessitated resolution of question under Securities Exchange Act); *Lowe v. NASD Regulation, Inc.*, No. 99-1751, 1999 U.S. Dist. LEXIS 19489, *9-10 (D.C.D.C. Dec. 14, 1999) (denying remand motion because plaintiffs' claims sought enforcement of duty imposed by federal law, thus requiring resolution of substantial questions of federal law); *Regents of the University of Minnesota v. Glaxo Wellcome, Inc.*, 58 F. Supp. 2d 1036 (D. Minn. 1999) (denying remand motion because plaintiffs' state-law claim for declaratory relief necessitated resolution of federal patent question); *Aetna/US Healthcare, Inc. v. Hoechst A.G.*, 1999 U.S. Dist. LEXIS 12952 (D. Minn. March 25, 1999) (to same effect).

15.     Of the four federal Courts of Appeals that have addressed federal question removal jurisdiction under the Communications Act, three have found that claims similar to plaintiffs' here are subject to removal on federal question grounds. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 55-56 (2d Cir. 1998) (affirming district court's assertion of federal question removal jurisdiction under "substantial federal question" doctrine); *Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983, 986-87 (7th Cir. 2000) (affirming district court's assertion of federal question removal jurisdiction under "complete preemption" doctrine); *In re Long Distance Telecommunications Litigation*, 831 F.2d 627 (6th Cir. 1987) (multi-districted class action claims attacking billing initiation practices by wireline

7

1  carriers preempted by Communications Act and removable on federal question grounds).  District

2  courts in other circuits have also approved federal question removal under the Communications Act

3  on a variety of doctrinal grounds. *See, e.g., In Re Comcast Cellular Telecommunications Litigation,*

4  949 F. Supp. 1193, 1204 (E.D. Pa. 1996).

5       16.    Accordingly, as the above cases demonstrate, adjudication of the claims set forth in

6  plaintiffs' new First Amended Complaint will require this Court to review and rule on the validity

7  of federal standards and regulations, thereby invoking federal question jurisdiction.

8       17.    This Notice is filed within 30 days of the date on which the first defendant received

9  a copy of plaintiffs' First Amended Complaint.  This removal therefore is timely under 28 U.S.C.

10  section 1446(b).  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

11       18.    Pursuant to 28 U.S.C. section 1446(a), Motorola has attached true and correct copies

12  of all process, pleadings, and orders in Exhibit "C" served upon defendants as of the date of this

13  Notice.

14       19.    As required by 28 U.S.C. section 1446(d), Motorola will promptly serve upon

15  plaintiffs' counsel and file with the Superior Court of California, County of San Diego a true and

16  correct copy of this Notice.

17       20.    All properly joined defendants consent to, expressly authorize, and join in the removal

18  of this suit. *See* Consents to Removal attached as Exhibit "D."[3]

19

20       WHEREFORE, defendants respectfully remove this action from the Superior Court of

21  California, County of San Diego to this Court pursuant to 28 U.S.C. section 1441.

22

23                    WRIGHT & L'ESTRANGE
                  Counsel for Motorola, Inc.

24

25  Date:  January 9, 2002          By:

26                      Robert C. Wright

27  _____

28      [3]Motorola and all other defendants reserve all defenses, objections, exceptions, and motions that each of them
assert in response to plaintiffs' complaint.

Case No. _____

## EXHIBITS
Notice of Removal

Exhibit A          Transfer Order dated October 31, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Exhibit B          Judicial Panel on Multidistrict Litigation Tag Along Notice
                   dated January 9, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit C          First Amended Complaint, processed pleadings and orders . . . . . . . . . . 15

Exhibit D          Consents to Remove by Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

EXHIBIT A

# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Morey L. Sear
United States District Court
Eastern District of Louisiana

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States District Court
Western District of Tennessee

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone:  [202] 502-2800
Fax:            [202] 502-2888

http://www.jpml.uscourts.gov

October 31, 2001

TO INVOLVED COUNSEL

Re:  MDL-1421 -- In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation

(See Attached Schedule A of Order)

Dear Counsel:

I am enclosing a copy of a Panel order filed today in the above-referenced matter.

The <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425 (2001), and specifically, Rules 1.1, 7.4 and 7.5, refer to "tag-along" actions. Please familiarize yourself with these <u>Rules</u> for your future reference.  With regard to Rule 7.5, you need only provide this office with a copy of the complaint which you feel qualifies as a "tag-along" action and informally request that our "tag-along" procedures be utilized in transferring the action to the transferee district.  If you have any questions regarding procedures used by the Panel, please telephone this office.

Very truly,

Michael J. Beck
Clerk of the Panel

By _____
Deputy Clerk

Enclosure

RECEIVED

NOV 2 2001

TUDINGS & ROSENBERG LLP

JPML Form 35

**Exhibit A**
Page 1

OCT 31 2001

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

## DOCKET NO. 1421

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## *IN RE WIRELESS TELEPHONE RADIO FREQUENCY EMISSIONS PRODUCTS LIABILITY LITIGATION*

## *BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ, JUDGES OF THE PANEL*

### *TRANSFER ORDER*

This litigation presently consists of four actions: one action each in the Eastern District of Louisiana, the District of Maryland, the Southern District of New York and the Eastern District of Pennsylvania. Before the Panel is a motion by certain telecommunications defendants,[1] pursuant to 28 U.S.C. § 1407, to centralize the actions in either the District of Maryland, Eastern District of Louisiana or Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings.[2] Several defendants[3] join in this motion. All plaintiffs oppose Section 1407 centralization.

At the hearing it was announced that four of the seven Panel members hold stock interests that would normally disqualify them under 28 U.S.C. § 455 from participating in the decision of this matter regardless of the insignificance of the financial impact any determination would likely have upon those interests. The statute, 28 U.S.C. § 1407(d), prescribes that "[t]he concurrence of four members shall be necessary to any action by the panel," and no provision is made for the appointment or assignment of substitute panelists in the event of disqualifications. The Panel thus differs from most courts in which other judges are available to replace any members of the court who are disqualified in a particular matter under § 455. In this proceeding, therefore, the Panel would be rendered incapable of discharging its

---

[1] Verizon Communications, Inc., Motorola Corporation, Cingular Wireless LLC, Sprint Corporation, and Philips Corporation.

[2] The Panel has been notified that a related action is pending in the Northern District of Georgia. This action and any other newly filed actions that come to the Panel's attention will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

[3] AT&T Corp., Audiovox Communications Corp., Baltimore Business Communications, Inc., Bell South Mobility, Bell South Mobility LLC, Cellco Partnership, Cellular One Group, Cingular Wireless, Motorola, Inc., NEC America Inc., Nokia Mobil Phones, Inc., Nokia, Inc., Philips Electronic North America Corp., Samsung Electronics, SANYO North America Corporation, SBC Telcom Inc., Sprint PCS Limited Partnership, Sprint Spectrum LLP d/b/a Sprint PCR, Verizon Maryland, Inc., and Verizon Wireless.

- 2 -

unquestioned statutory jurisdiction and responsibility but for the "rule of necessity" – that is, the well established concept that a judge is duty bound to perform his or her jurisdictional authority even in the face of a statutory disqualification if recusal would result in the lack of a forum in which the issue can be adjudicated. In *United States v. Will*, 449 U.S. 200, 217, 101 S.Ct. 471, 481 (1980), the Court not only recognized the viability of the "rule of necessity" in the federal courts in general, it also held more specifically that § 455 does not negate the application of the rule when invoked to preserve a forum for decision. The Court said:

> The congressional purpose so clearly expressed in the Reports gives no hint of altering the ancient Rule of Necessity, a doctrine that had not been questioned under prior judicial disqualification statutes. The declared purpose of § 455 is to guarantee litigants a fair forum in which they can pursue their claims. Far from promoting this purpose, failure to apply the Rule of Necessity would have a contrary effect, for without the Rule, some litigants would be denied their right to a forum. The availability of a forum becomes especially important in these cases.

As ruled at the hearing, therefore, all of the members of the Panel participated in the decision of this matter under the "rule of necessity" in order to provide the forum created by the statute, 28 U.S.C. § 1407.[4]

On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact arising out of allegations that defendants misrepresented and concealed alleged adverse health risks of wireless telephone use that could be eliminated by use of a telephone headset. Centralization under Section 1407 in the District of Maryland will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, while accordingly being necessary in order to avoid duplication of discovery, prevent inconsistent pretrial rulings and conserve the resources of the parties, their counsel and the judiciary.

In light of the geographic dispersal of the parties involved in this docket, no federal district stands out as the focal point for this litigation. We are persuaded that the District of Maryland is the most appropriate transferee forum for this litigation. We note that an action is pending there before Judge Catherine C. Blake, who already has relevant experience with some issues likely involved in this litigation.

---

[4] The Panel recognizes that the addition of any one of the four disqualified members would be sufficient to provide a quorum, but would not necessarily provide the required "concurrence of four members" in order to reach a decision. Application of the rule of necessity therefore required that all of the members who would otherwise be disqualified by § 455 participate in the hearing and the decision. In any event, the possibility of applying other procedural approaches was rendered moot because the decision of the Panel on the merits was unanimous.

- 3 -

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the attached Schedule A and pending outside the District of Maryland are transferred to the District of Maryland and, with the consent of that court, assigned to the Honorable Catherine C. Blake for coordinated or consolidated pretrial proceedings with the action pending there.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# SCHEDULE A

## MDL-1421– In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation

### Eastern District of Louisiana

*Garrett J. Naquin, et al. v. Nokia Mobile Phones, Inc., et al.*, C.A. No. 2:00-2023

### District of Maryland

*J. Douglas Pinney, M.D., et al. v. Nokia Inc., et al.*, C.A. No. 1:01-1456

### Southern District of New York

*Crystal Gilliam, et al. v. Nokia Inc., et al.*, C.A. No. 1:01-4275

### Eastern District of Pennsylvania

*Francis J. Farina v. Nokia Inc., et al.*, C.A. No. 2:01-2477

**EXHIBIT B**

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE WIRELESS TELEPHONE RADIO FREQUENCY EMISSIONS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) MDL Docket No. 1421 |

**DEFENDANTS' SECOND NOTICE OF RELATED ACTIONS**

Pursuant to R.P.J.P.M.L. 7.5(e), the undersigned hereby notifies the Panel of a

tag-along action, *Brower v. Motorola , Inc., et al.*, pending in the United States District Court for

the Southern District of California.  A copy of the operative complaint is attached at Tab A.

*Brower* originally was filed by a husband and wife seeking to recover damages

for personal injuries, including a brain tumor, allegedly caused by Mr. Brower's use of wireless

telephones.  The action initially was removed to federal court based largely on diversity

jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441.  After permitting plaintiffs to add a new

defendant that destroyed diversity of citizenship, the district court remanded the action.  On

December 10, 2001, however, plaintiffs filed an amended complaint that for the first time asserts

claims on behalf of a purported class (consisting of all California wireless telephone purchasers),

and adds a series of claims premised on the alleged insufficiency of federal wireless

telecommunications laws and regulations.  These amendments provide a basis for federal

DCL:478756.1

**Exhibit B
Page 6**

jurisdiction that was not presented by the original personal injury claims and therefore permit removal pursuant to 28 U.S.C. § 1446(b), and also bring this action within the scope of the proceeding created by the Panel in MDL No. 1421..

Like the complaints in the actions previously transferred by the Panel as part of MDL No. 1421, this action now asserts multiple claims ranging from violation of state consumer-protection statutes to fraud to strict liability against numerous members of the wireless telephone industry, all on behalf of a putative class of all wireless telephone users in the relevant state. This action thus now conforms to the other actions in its allegation on behalf of a purported state-wide class "that defendants misrepresented and concealed adverse health risks of wireless telephone use . . . ." Transfer Order (JPML Oct. 31, 2001) at 2. The purported class in this action overlaps with the purported nationwide class asserted in *Naquin v. Nokia Mobile Phones, Inc.* (one of the constituent actions in MDL No. 1421) and is parallel to the purported statewide classes asserted in each of the other constituent actions. Transfer and coordination of this action therefore would achieve the efficiencies on which 28 U.S.C. § 1407 is based.

WHEREFORE, on behalf all defendants in *Brower*, the undersigned respectfully requests that the Panel transfer this tag-along action together with those actions as to which transfer and coordination has previously been requested pursuant to 28 U.S.C. § 1407.

DC1:478756.1

Dated: January 9, 2002

Respectfully submitted,

_John H. Beisner_
O'MELVENY & MYERS LLP
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004-1109
(202) 383-5300

*Counsel for Verizon Communications Inc.,*
*Cellco Partnership, Verizon Wireless,*
*Verizon Wireless LLC, Verizon Wireless*
*Services LLC, Verizon Maryland Inc., and*
*GTE Wireless, Inc.*

DC1:478756.1

**Exhibit B**
**Page 8**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on the following by regular U.S. mail, postage prepaid, on this 9th day of January, 2002:

Stewart Baker
Mark Horning
Thomas M. Barba
Steptoe & Johnson
1330 Connecticut Avenue, NW
Washington, DC  20036-1759

Edward W. Gerecke
Carlton Fields, P.A.
One Harbour Place
777 South Harbour Island Blvd.
Tampa, FL  33602-5730

Roy C. Cheatwood
Phelps Dunbar LLP
Canal Place
365 Canal Street
Suite 2000
New Orleans, LA  70130-6534

Larry N. Stopol
Levy & Stopol, LLP
One Pennsylvania Plaza
New York, NY  10119

Mark H. Kolman
Peter Morgan
Leslie Cohen
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, NW
Washington, DC  20037

James R. Thompson
Obermayer, Rebmann, Maxwell & Hippel, LLP
20 Brace Road, Suite 300
Cherry Hill, NJ  08034

Maureen E. Murphy
Murphy & Murphy, L.L.C.
14 North Rolling Road
Catonsville, MD  21228-4848

Elwood E. Swam
1325 Main Street, P.O. Box 176
Hampstead, MD  21074-0176

Jane Fugate Thorpe
Scott A. Elder
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424

Paul Strain
Venable, Baetjer & Howard, LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD  21201

Robert C. Heim
Robert A. Limbacher
Dechert Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103-2793

Christopher M. Mason
Nixon Peabody LLP
437 Madison Avenue
New York, NY  10022

Charles L. Perry
David J. Schubert
Arter & Hadden LLP
1717 Main Street, Suite 4100
Dallas, TX  75201-4605

DC1:499370.1
01/9/02

**Exhibit B
Page 9**

Richard A. Dean
Arter & Hadden LLP
1801 K Street, NW, Suite 400K
Washington, DC 20006-1301

Howard D. Scher
Buchanan Ingersoll, Professional
Corporation
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985

Tom Watson
Kurt Renner
Watson & Renner
1919 M Street, NW, Suite 400
Washington, DC 20036

Edward H. "Ned" Bergin
Jones, Walker et al.
201 St. Charles Avenue
New Orleans, LA 70170

Charles Babcock
David T. Moran
Jackson Walker LLP
901 Main Street, Suite 6000
Dallas, TX 75202

William T. Hangley
Mark Aronchick
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933

Larry Duplass
Christian Bogart
Duplass, Zwain & Bourgeois
3838 N. Causeway Blvd.
Suite 2900
Metairie, LA 70002

Donald Segal
Segal, McCambridge, Singer and
Mahoney, Ltd.
One IBM Plaza, Suite 200
Chicago, IL 60611

Pete Swayze
Segal, McCambridge, Singer and
Mahoney, Ltd.
1515 Market Street, Suite 1720
Philadelphia, PA 19102

James W. Bartlett, III
Wilson Elser Moskowitz Edelman &
Dicker LLP
400 East Pratt Street, Suite 700
Baltimore, MD 21202-3116

H. Michael O'Brien
Wilson Elser Moskowitz Edelman &
Dicker LLP
3 Gannett Drive
White Plains, NY 10604

Charles M. Steen
Steen, McShane & Williamson, L.L.C.
Suite 1250 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-1250

Michael Yaggy
Anthony M. Conti
Piper Marbury Rudnick & Wolfe, LLP
6225 Smith Avenue
Baltimore, MD 21209

Ronald Schiller
Piper Marbury Rudnick & Wolfe, LLP
3400 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Warren "Kelly" L. Simpson, Jr.
Weber Goldstein Greenberg &
Gallagher, LLP
The Belgravia Building
1811 Chestnut Street, Suite 600
Philadelphia, PA 19103

- 2 -

DCI:499370 1
01/9/02

**Exhibit B**
**Page 10**

James B. Irwin
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130

Sheila Birnbaum
Skadden, Arps, Slate, Meagher & Flom
LLP
4 Times Square
New York, NY 10036-6522

Edward M. Crane
David L. Hanselman
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive
Suite 2100
Chicago, IL 60606-1285

Waller T. Dudley
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD 21202-1671

Steven A. Haber
Obermayer, Rebmann, Maxwell &
Hippel LLP
One Penn Center
1617 John F. Kennedy Boulevard
19th Floor
Philadelphia, PA 19103-1895

Matt Farley
Preaus, Roddy & Krebs, LLP
Suite 1650
650 Poydras Street
New Orleans, LA 70130

Steven M. Zager
Austin Tighe
Brobeck Phleger & Harrison, LLP
4801 Plaza on the Lake
Austin, TX 78746

Madeline M. Sherry
Hecker Brown Sherry and Johnson LLP
1700 Two Logan Square
Philadelphia, PA 19103

Terry Christovich Gay
Christovich & Kearney, LLP
Suite 2300
Pan American Life Center
601 Poydras Street
New Orleans, LA 70130-6078

Frank Citera
Greenberg Traurig LLP
77 West Wacker Drive
Suite 2500
Chicago, IL 60601

Robert J. Hafner
Lavin, Coleman, O'Neill, Ricci, Finarelli
& Gray
Penn Mutual Tower, Suite 1000
510 Walnut Street
Philadelphia, PA 19106

Brandt K. Enos
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, LA 70130-3672

John A. Stewart, Jr.
Hulse & Wanek
1010 Common Street
Suite 2800
New Orleans, LA 70112

Mark Jeansonne
Milling Benson Woodward L.L.P.
909 Poydras Street
Suite 2300
New Orleans, LA 70112-1017

- 3 -

**Exhibit B**
**Page 11**

Bryan Hopkins
General Counsel
Samsung Electronics America, Inc.
105 Challenger Road
Ridgefield Park, NJ 07660

Janet MacDonell
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130-3672

James W. Bartlett, III
Andrew M. Winick
Wilson Elser Moskowitz Edelman &
Dicker LLP
400 East Pratt Street, Suite 700
Baltimore, MD 21202-3116

Rochelle Fedullo
Wilson Elser Moskowitz Edelman &
Dicker LLP
The Curtis Center
Suite 1130 East
Independence Square West
Philadelphia, PA 19106

Raymond Ward
Sessions, Fishman & Nathan LLP
201 St. Charles Avenue
Thirty-Fifth Floor
New Orleans, LA 70170-3500

Robert J. Hafner
Lavin, Coleman, O'Neill, Ricci, Finarelli
& Gray
Penn Mutual Tower, Suite 1000
510 Walnut Street
Philadelphia, PA 19106

John F. Olinde
Chaffe, McCall, Philllips, Toler &
Sarpy, L.L.P.
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300

Eugene Schoon
Sidley Austin Brown & Wood
10 South Dearborn
Chicago, IL 60603

Alan M. Unger
Sidley Austin Brown & Wood
875 Third Avenue
New York, NY 10022

Susan K. Herschel
Hoyle, Morris & Kerr
One Liberty Place
1650 Market Place, Suite 4900
Philadelphia, PA 19103

Marchell Willian
Terrence J. Dee
Kirkland & Ellis
Aon Center
200 East Randolph Drive
Chicago, IL 60601

Seamus Duffy
Drinker, Biddle & Reath, LLP
One Logan Square
Philadelphia, PA 19103

J. Stan Sexton
Mike Moeller
Shook, Hardy & Bacon, L.L.P.
One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2118

Ray Biagini
McKenna & Cuneo, LLP
1900 K Street, NW
Washington, DC 20006

Peter G. Angelos
Steven Thaler
Law Offices of Peter G. Angelos, P.C.
115 Broadway, 3rd Floor
New York, NY 10006

- 4 -

**Exhibit B**
**Page 12**

Kenneth A. Jacobsen
Nancy B. Grogan
Law Offices of Kenneth A. Jacobsen
22 West Front Street
Media, PA 19063

Joseph A. O'Keefe
O'Keefe & Sher, P.C.
I.D. No. 77068
15019 Kutztown Road
Kutztown, PA 19530

Michael R. Allweiss
Lowe, Stein, Hoffman, Allweiss &
Hauver, L.L.P.
701 Poydras Street
One Shell Square, Suite 3600
New Orleans, LA 70139

Conrad S.P. Williams, III
St. Martin & Williams
4084 Highway 311
P.O. Box 2017
Houma, LA 70361-2017

H. Russell Smouse
John A. Pica, Jr.
Law Offices of Peter G. Angelos
100 N. Charles Street
One Charles Center, 19th Floor
Baltimore, MD 21201

Carl Hilliard
1246 Stratford
Del Mar, CA 92014

Nathan I. Nahm
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482

Richard E. Regan
Agent for Service of Process for
Cellular Rentals, Inc.
3324 N. Causeway Blvd.
Metairie, LA 70002

Clay Callaghan
Owner, Planet Cellular
Communications, Inc.
P.O. Box 73857
Metairie, LA 70033

Leon Gary
Jones, Walker, *et al.*
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA 70809

Alan J. Droste
Pillsbury Winthrop LLP
650 Town Center Drive, Seventh Floor
Costa Mesa, CA 92626

Adam H. Charnes
WorldCom, Inc.
1133 19th Street, N.W.
Washington, D.C. 20036

Kevin G. Getzendanner
Frank N. White
Arnall Golden Gregory LLP
1201 West Peachtree Street, Suite 2800
Atlanta, GA 30309-3450

Scott A. Farrow
Troutman Sanders LLP
600 Peachtree Street, NE, Suite 5200
Atlanta, GA 30308-2216

Marchell Willian
Terrence J. Dee
Kirkland & Ellis
Aon Center
200 East Randolph Drive
Chicago, IL 60601

Seamus Duffy
Drinker, Biddle & Reath, LLP
One Logan Square
Philadelphia, PA 19103

- 5 -

**Exhibit B**
**Page 13**

J. Stan Sexton
Mike Moeller
Shook, Hardy & Bacon, LLP
One Kansas City Place
1200 Main Street
Kansas City, MO  64105-2118M

Ray Biagini
McKenna & Cuneo, LLP
1900 K Street, N.W.
Washington, D.C.  20006

John H. Beisner
O'Melveny & Myers
555 13th Street, N.W.
Suite 500 West
Washington, D.C.  20004-1109

Clifford J. Zatz
Akin, Gump, Strauss, Hauer & Feld,
L.L.P.
1333 New Hampshire Avenue, N.W.
Suite 4000
Washington, D.C.  20036

Brian P. Brooks

DC1:499370.1
01/9/02

**Exhibit B**
**Page 14**

**EXHIBIT C**

ORIGINAL



1  Carl Hilliard (State Bar No. 034270)
   1246 Stratford
2  Del Mar, California 92014
   Telephone: (858) 509-2938
3  Attorney for Plaintiffs

4

5

6

7

8                **SUPERIOR COURT OF CALIFORNIA**

9                  **COUNTY OF SAN DIEGO**

10  Gibb Brower and Kim Brower,

11              Plaintiffs,              Case No.: GIC765987

12  vs.                                 **FIRST AMENDED COMPLAINT**

13  Motorola, Inc., a Delaware          <u>CLASS ACTION</u>
    corporation; U.S. West Wireless, LLC,
14  a Colorado corporation; U. S. West
    Communications, Inc., a Colorado
15  corporation; Verizon Communications,
    Inc., a New York corporation; GTE
16  Mobilnet of San Diego Incorporated,
    a Delaware corporation; GTE Wireless
17  San Diego LLC, a California Limited
    Liability corporation; Sony Electronics
18  Inc., a Delaware corporation; Cellular
    Telecommunications and Internet
19  Association, a District of Columbia
    corporation, Cellular Carriers
20  Association of California, a California
    corporation; and DOES 1 through
21  100, inclusive,

22              Defendants.

23

24  Plaintiffs allege as follows:

25  1. Defendants Motorola, Inc. ("Motorola") and Sony Electronics Inc. ("Sony") manufacture

26  portable handheld cellular telephones ("PCT") for use over cellular telephone systems..

27  2. Defendant U.S. West Wireless, LLC, ("U.S. Wireless") was licensed by the Federal

28  Communications Commission ("FCC") to provide cellular telephone service in San Diego County

Brower v. Motorola
First Amended Complaint

Exhibit C
Page 15

1  from August of 1994 up until approximately September of 1995 when it transferred its cellular

2  system to Defendant GTE Mobilnet of San Diego Incorporated.  ("GTE Mobilnet").

3  3.  GTE Mobilnet thereafter provided cellular telephone service over said system to the public in

4  San Diego, California until September or October, 2000 when its assets were transferred to GTE

5  Wireless of Pacific, Inc.

6  4.  Defendants Cellular Telecommunications and Internet Association ("CTIA") and Cellular

7  Carriers Association of California ("CCAC") are trade associations of cellular telephone

8  equipment manufacturers and service providers.

9  5.  Defendants American National Standards Institute ("ANSI") and Institute of Electrical and

10  Electronic Engineers Inc. ("IEEE") are engaged in the establishment and setting of safety

11  standards for PCTs.

12  6.  Plaintiff Gibb Brower, a.k.a. William G. Brower, purchased  a new Motorola PCT from U.S.

13  Wireless on or about August 8, 1994 for use on its cellular system in San Diego, California.  He

14  continued to use the same PCT after the transfer of the cellular system to GTE Mobilnet.  In

15  approximately March of 1999, Mr. Brower purchased a new PCT manufactured by Sony from

16  GTE Mobilnet which he used over the cellular system until April of 2000.  Plaintiff Kim Brower,

17  a.k.a. Kimberly Brower, is the wife of Gibb Brower.

18  7.  This Complaint alleges fourteen causes of action:

19       a.  Unfair business practices in violation of California Business & Professions Code

20       Section 17200, et seq..

21       b.  Deceptive practices in violation of the Consumers Legal Remedies Act (California

22       Civil Code Section 1750, et. seq.).

23       c  Intentional misrepresentation for falsely stating that PCTs are absolutely safe and

24       unconditionally pose no risk of harm to the health of the user and that the PCT standards and

25       test methods are based on complete, true and correct data and full consideration of all relevant

26       information;

27       d.  Negligent misrepresentation for failure to tell the public that numerous studies

28       show that PCT use can cause harm to living systems including, but not limited to, genetic

Brower v. Motorola
First Amended Complaint                                   2

Exhibit C
Page 16

damage, change in the ion balance of nerve cells, weakening of myelin sheets of cells, damage to the cells in the brain, interference with the brain's blood barrier, dysfunction of the cellular structure of the brain and may stimulate growth among supportive cells in the nerve system leading to the development of malignant tumor and for failure to disclose that the PCT testing standards were not properly developed and that the PCT testing methods are unreliable;

a. Strict liability for the manufacture and selling of PCTs without adequately testing said equipment for safety despite the knowledge that such equipment had latent hazards to health of the user and for failure to implement safeguards to reduce or eliminate the risks of RF and ELF radiation;

b. Product liability for failure to warn consumers of the potential health risks associated with the use of PCTs and failure to equip PCTs with the proper and necessary safeguards to protect the user against such health risks;

c. Negligence by failing to exercise ordinary care in the standard setting, manufacture, sale, testing, quality assurance, quality control, distribution, advertising, instructions and warnings concerning PCTs;

d. Breach of Express Warranty that PCTs were safe for use and posed no risk of harm to users;

e. Breach of Implied Warranty that PCTs were fit for their intended purpose and posed no risk of harm to users;

f. Conspiracy to suppress, manipulate, conceal, cover-up, distort and discredit research and studies showing a risk of harm to PCT users and to purchase, ghostwrite, create, bribe, and co-opt researchers to reach inconclusive results to be released to the public under the guise that such studies show that PCTs are safe and, to obstruct, prevent and undermine the setting of accurate standards and the adoption of accurate testing procedures;

g. Fraud by misleading users of PCTs to believe that such equipment was safe and properly tested in accordance with sound standards;

h. Battery by exposing plaintiffs and the class to radiation, to which they did not consent, and which defendants knew, or should have known, posed a risk of harm to their

Brower v. Motorola
First Amended Complaint                                3

Exhibit C
Page 17

1   persons; and

2       i. Punitive damages for wanton and willful misconduct by acting in a conscious and

3   callous disregard of public safety by concealing the inadequacy of the test standards, the

4   inefficacy of the testing procedures, the possibility that PCTs will result in injury to users and

5   for willful and deliberate failure to avoid such consequences.

6   **JURISDICTION AND VENUE**

7   8. The allegations and claims for relief in this First Amended Complaint arise from acts

8   committed in this state, which violate California's laws.

9   9. The FCC has not preempted state action in this matter. Furthermore, the FCC affirmatively

10  states that it is not the"expert agency" for evaluating the health effects of PCTs.

11  10. The U.S. Food and Drug Administration ("FDA") has not preempted state action in this

12  matter. The FDA states that it cannot say that PCTs are safe.

13  11. Venue is proper in this Court as Plaintiffs entered into contracts, purchased PCTs and used

14  such equipment in San Diego, California and a substantial number of the acts complained of

15  herein took place in San Diego County.

16  **PARTIES**

17  12. Plaintiffs are residents of the City of San Diego, State of California. At all times herein

18  mentioned, Plaintiff Gibb Brower was the owner and operator of a landscape business in San

19  Diego County.

20  13. Defendant Motorola is a Delaware corporation, headquartered at 1303 E. Algonquin Road,

21  Schaumburg, Illinois and doing business in California.

22  14. Defendants U.S. Wireless and U.S. West Communications, Inc. ("U.S. West") are a

23  Colorado corporations. U.S. Wireless is an affiliate of and controlled by defendant US West.

24  Plaintiffs are informed and believe and thereon allege that U.S. Wireless has no assets, and if it

25  still exists, is merely a shell corporation.

26  15. Defendant GTE Mobilnet is a Delaware corporation and was an affiliate of and controlled by

27  defendant GTE Corporation ("GTE"), a New York corporation. Defendant GTE was previously

28  identified herein as "Doe 1." Plaintiffs are informed and believe and thereon allege that in

Brower v. Motorola
First Amended Complaint           4

**Exhibit C
Page 18**

1  September or October of 2000, all of the assets of GTE Mobilnet were transferred to GTE

2  Wireless of Pacific, Inc. and then to GTE Wireless of San Diego, LLC, which is now a wholly

3  owned subsidiary of AT&T Wireless Services, Inc., a Delaware corporation. This transfer was

4  made in connection with a merger between Bell Atlantic Corporation and GTE Corporation (the

5  "merger"). Under the merger agreement, GTE was to become merged into a newly formed New

6  York corporation, a subsidiary of Bell Atlantic Corporation, a Delaware corporation. Plaintiffs

7  are informed and believe and thereon allege that the newly formed corporation became Verizon

8  Communications, Inc. ("Verizon"). Defendant Verizon was previously identified herein as "Doe

9  2." The merger was subject to the approval of the Department of Justice ("DOJ") and the FCC,

10  who imposed conditions on their consent. As part of a court consent decree, the parties agreed to

11  divest themselves of the cellular telephone system operated by GTE Mobilnet in San Diego.

12  Plaintiffs are informed and believe and thereon allege that GTE Mobilnet was dissolved after

13  receiving the sale proceeds. Plaintiffs are further informed and believe and thereon allege that

14  these proceeds were distributed to GTE and/or Verizon who are liable for the damages caused by

15  their affiliate. Plaintiffs are informed and believe and thereon allege that defendant Verizon

16  Wireless is a joint venture of Verizon and Vodafone AirTouch, Plc. Verizon Wireless is doing

17  business in California. Plaintiffs are uncertain as to the corporate identity of the chain of

18  corporate affiliates which are controlled by Verizon and what, if any, assumptions of liability have

19  been assumed as part of the merger and reorganization and will seek to amend this complaint to

20  set forth such information when it has been ascertained.

21  16. Defendant Sony Electronics Inc. is a Delaware corporation which has its principal place of

22  business at 1 Sony Drive, Park Ridge, New Jersey.

23  17. Defendant CTIA is a trade association incorporated under the laws of the District of

24  Columbia, having its principal place of business at 1250 Connecticut Avenue, N.W., in

25  Washington, D.C. CTIA tests PCTs and certifies such equipment for use with cellular systems.

26  Defendant CCAC is a trade association incorporated under the laws of California, having its

27  principle place of business at 1225 8th Street, Suite 550, Sacramento, California. CCAC was

28  previously identified herein as "Doe 3." CCAC provides a forum for defendants to discuss public

Brower v. Motorola
First Amended Complaint                    5

Exhibit C
Page 19

1  policy issues in California and to communicate wireless industry positions to the public.

2  18. Defendant ANSI is a corporation organized and existing under the laws of the District of

3  Columbia, having its principle place of business at 1819 L Street NW, Suite 600, Washington,

4  D.C. 20036. ANSI was previously identified herein as Doe 4. ANSI is a private, non-profit

5  organization made up of businesses, professional societies and trade associations, governmental

6  agencies and standards developers. A primary goal of ANSI is the enhancement of global

7  competitiveness of U.S. Business by promoting voluntary consensus standards. Plaintiffs are

8  informed  and believe and thereon allege that many of other defendants' officers and employees

9  are members of ANSI.

10  19. Defendant IEEE is a corporation organized and existing under the laws of the State of New

11  York, having its principle place of business at 3 Park Avenue, Floor 17, New York, New York

12  10016. IEE was previously identified herein as Doe 5.  IEEE  is a non-profit, technical

13  professional association of electrical and radio engineers. Plaintiffs are informed and believe and

14  thereon allege that many of the other defendants' officers and employees are members of  IEEE.

15  20. The true names and identities of the defendants sued herein under California Code of Civil

16  Procedure § 474 as Does 6 through 100, inclusive, are currently not known to plaintiffs, who

17  therefore sues these defendants by such fictitious names. Plaintiffs will seek to amend this First

18  Amended Complaint and include these Doe defendants' true names and capacities when they are

19  ascertained. Each of the fictitiously named defendants is responsible in some manner for the

20  conduct alleged herein and for the damages suffered by Plaintiffs.

21  21. At all times herein mentioned in the causes of action alleged herein, each and every

22  defendant was an agent and/or general partner of each and every other defendant.  In committing

23  the acts complained of herein, each and every defendant acted within the scope of its agency

24  and/or partnership agreement and such action was with the consent, permission, authorization and

25  knowledge of each of the remaining defendants, and perpetrated and/or aided and abetted the

26  violations of law described herein. All actions of each defendant as alleged herein were ratified

27  and approved by every other defendant or their officers, directors, controlling persons, agents,

28  partners, or joint venturers.

Brower v. Motorola
First Amended Complaint                    6

Exhibit C
Page 20

## FACTUAL BACKGROUND

22. Cellular communications are achieved by transmission of information on airwaves back and forth between the cellular telephone and a nearby cell site. The airwaves used for cellular telephone transmissions are in the 825 - 845 MHz radio frequency ("RF") range. Two modes of transmission are used by cellular systems, analog and digital. In both cases, these airwaves are modulated with an electromagnetic wave representation of the speech information. This modulation often includes extremely low frequency ("ELF") components either from the speech itself in the case of analog transmission or from the encoding scheme in the case of digital transmission and/or the PCT battery. To prevent interference to and from other users of the cellular system, a control unit at the cell site instructs the cellular radio telephones within its range to increase or decrease transmitting power when making and during a call.

23. Cellular telephones were originally installed in automobiles, used external antennas and operated at 3 watts of power. Users of these vehicle mounted cellular telephones were insulated from the electric fields, magnetic fields and electromagnetic fields (sometimes hereinafter called "RF radiation") generated by this equipment by the shell of the automobile and by the distance of the user from the radiating elements. (RF radiation is also commonly called non-ionizing radiation, electromagnetic radiation, RFR (radio frequency radiation), and, EME (electromagnetic energy)).

24. Defendants U.S. Wireless and then GTE Mobilnet and next GTE Wireless were the operators of a cellular system in San Diego County. This system was designed, constructed and installed to serve vehicle mounted 3 watt units. The defendants began manufacturing and marketing PCTs in approximately 1986. Thereafter, some of defendants' cell sites were, from time to time, redesigned to be "portable compatible," however, Plaintiffs are informed and believe and thereon allege that during all times herein relevant, most of the cell sites had not been upgraded. As a result, PCTs using this cellular system were normally operated at or near their maximum power, which fact was not disclosed to the plaintiffs or the public.

25. The cellular telephone market behaves in classic oligopolistic fashion. Generally speaking, all PCTs are purchased directly from cellular telephone companies or through one of their agents.

Brower v. Motorola
First Amended Complaint                            7

Exhibit C
Page 21

1   Cellular service and PCTs are sold as a package and in the package, the price of the PCT is fixed

2   below cost in order to discourage any PCT manufacturers from trying to sell directly to

3   consumers. Agents are given a rebate to cover the below cost sale of the PCT. This tying

4   arrangement gives cellular telephone companies, together with CTIA and CCAC, de facto control

5   over the PCT equipment market and the power to accept or reject PCTs that do not meet their

6   desires. This market power was acknowledged in a July 24, 2001, article in the San Diego Union

7   Tribune, a representative of Motorola is quoted as saying PCT manufactures "compete on style,

8   on brand, on their relationship with wireless operators." (Emphasis added). This control over the

9   manufacturing of PCTs is further enforced by CTIA's testing program that grants the

10   manufacturer the right to place CTIA's seal of approval on the approved PCT and PCTs bearing

11   this seal have been and are sold in the state of California. Furthermore, the defendant carriers test

12   PCTs before allowing them to be used on their cellular systems. Thus, at all times herein

13   mentioned, the defendants had sufficient power over the PCT markets to control the addition or

14   absence of safety features, such as radiation shielding.

15   26. The power density of RF radiation from a PCT is approximately 2 billion times greater than

16   occurs naturally in the environment. Because the PCT is used next to the head, the RF radiation

17   penetrates 2 ½ inches or more ("the plume") into the brain of an adult male (and even further in

18   smaller or less developed skulls). Use of a PCT inside of a vehicle increases the level of RF

19   exposure to the occupants because some of the waves are bounced back into the vehicle and

20   metal-framed eyeglasses, metal implants, orthodontic braces and metallic jewelry worn about the

21   head may modify the radiation absorption resulting in "hot spots" of high energy concentration in

22   the brain.

23   27. The cellular transmit frequencies are very absorptive and penetrate deep into the tissue where

24   heating effects occur. Medical equipment used for hyperthermia/diathermy treatments use nearby

25   frequencies (750 MHz and 915 MHz) because they are ideally suited for delivering heat deep into

26   the brain without causing any skin heating. Cellular frequencies are located in the middle of the

27   band between these medical frequencies.

28   28. RF radiation heats the brain cells by exerting torques on the water molecules in the cells and

Brower v. Motorola
First Amended Complaint         8

Exhibit C
Page 22

1  gradually increasing the water molecules' thermal energies through friction like effects. Water

2  molecules have electrically charged ends, one end is positively charged and the other is negatively

3  charged. The water molecules are twisted back and forth very rapidly by RF radiation and as they

4  twist, they rub against one another and friction heats them up. The plaintiffs are informed and

5  believe and thereon allege that the electric field produced by a PCT fluctuates back and forth

6  approximately 2.45 billion times each second. That means that an electrically charged particle will

7  be pulled first one way and then the other, back and forth some 2.45 billion times each second

8  causing the water in the exposed brain cells to become hot..

9  29. Plaintiffs are informed and believe and thereon allege that a temperature rise of as little as

10  0.5C in the sensitive brain tissue can cause tissue destruction, increase in cell membrane

11  permeability, interfere with the function of the immune system and inhibit the function of

12  protective cells and enzymes, all of which increase the vulnerability to illness such as cancer.

13  30. At all times herein mentioned, ANSI and IEEE have held themselves out to the government

14  and to the public as experts in the determination of what levels of heating of the brain cells from

15  RF radiation are "safe" for humans. Using an atypical cadaver of a very large and heavy man, a

16  mathematical model was constructed to determine the amount of heat that could be "safely"

17  absorbed in the brain of the "average" person using a PCT. The resulting formula, called "SAR"

18  (for specific absorption rate), equals the value of energy absorption per unit mass, which the

19  defendants say can be safely absorbed into the brain.. In fact, the cadaver used as a model does

20  not represent the average adult male much less the average adult female, teenager or child.

21  Plaintiffs are informed and believe that the penetration of RF radiation into the brain is much

22  greater in average adult males and much greater in adults with small heads and with teenagers and

23  children who have less developed skulls, than predicted in the model and that this fact was known

24  but entirely ignored by ANSI and IEEE and the defendants.

25  31. ANSI and IEEE neglected their duty of care in setting the SAR standard in a number of

26  important respects, including but not limited to the following: (a) the SAR standard is based on

27  far field measurements of RF radiation even though it is the near field that penetrates into the

28  brain of the PCT user; (b) there is no analogue between the far field and the near field yet no

Brower v. Motorola
First Amended Complaint                        9

Exhibit C
Page 23

1  effort was or has been made to measure the power of characteristics of the near field by ANSI or

2  IEEE; ©) it is believed that stored energy accumulates around the antenna of the PCT. Plaintiffs

3  are informed and believe and thereon allege that this stored energy is many magnitudes higher

4  than the far field and penetrates deeply into the brain however, no effort has been made by ANSI

5  or IEEE to identify or measure the power density of this stored energy; and (d) the cadaver used

6  as a model for the SAR calculation does not comport with the size and shape of the average adult

7  male, the average adult female or a child.  The use of this flawed data and the inadequacy and

8  deficiencies in the SAR standard are and were well known to the defendants but not to the public.

9  Indeed, on July 13, 2001, in Federal Court, in the case of *Newman v. Motorola, et. al.*, an

10  attorney speaking for all of the defendants in that case conceded to the court that the "ANSI

11  standard is not a scientific study – it's simply a number."

12  32.  The plaintiffs are informed and believe and thereon allege that the defendants' knew, both

13  before and after the introduction of PCTs in 1986, that PCTs could not pass the then current SAR

14  safety standards.  Thus, the defendants cooked up an excuse, with the compliance of ANSI/IEEE,

15  to exempt PCTs from compliance with these safety standards on the grounds that "the peculiar

16  nature of the electromagnetic energy" in close proximity to the human head prevented radiation

17  from entering the brain and therefore PCTs were classified in the same category as television

18  remote control and garage door openers.  Plaintiffs are informed and believe and thereon allege

19  that the defendants knew that these grounds were entirely without foundation and were specious

20  but permitted and promoted this false classification. ANSI/IEEE knew, or should have known,

21  that this exemption and classification was wholly without merit but allowed the defendants to

22  control and emasculate their standard setting process.

23  33.  SAR testing of PCTs manufactured after August 1, 1996, was mandated by the FCC  who

24  left it to the manufacturers to design the testing methods and self-certify the results.  The

25  defendants thereupon created/used a fiberglass mold of the human head (called a "phantom"),

26  which they filled with a liquid or gel mainly composed of sugar water.  PCTs were "tested" for

27  compliance with the SAR standard by being placed in the hand of the phantom and set to radiate

28  RF emissions into the sugar water.  The levels of heat in the sugar water are measured by probes.

**Exhibit C**
**Page 24**

1   The plaintiffs are informed and believe and thereon allege that at all times defendants' knew that

2   the use of this sugar water to replicate the human skin, fat, muscle, bone, CSF and brain for the

3   purpose of measuring the heating effect of RF radiation on humans is a sham and does not truly

4   duplicate the conditions for propagation of the RF radiation in the head.  Plaintiffs are further

5   informed and believe and thereon allege that the defendants knew that "hot spots" created by a

6   convergence of such radiation in portions of the brain are not measured by such tests and that

7   such hot spots may be 20 to 30 times hotter than the levels measured in the sugar water.

8   34.  In March, 2000, a report from the Directorate General for Research to the European

9   Parliament reviewed the above reports and other evidence and concluded that RF radiation from

10   PCTs constitutes "a major contemporary threat to the health of Society."  The report concludes

11   that as a result of PCT use "the brain (the most sensitive organ of the body) is, for the first time in

12   its evolutionary history, being exposed at short range to a source of both pulsed microwaves

13   (from the near-field of the antenna) and more highly penetrative *ELF* magnetic fields (from the

14   battery.)"  The author of the report, Dr. G. Hyland, recommended that consumers be warned that

15   the SAR only relates to heating of tissue "and is in *no way* relevant to *non-thermal* effects that the

16   emissions from a mobile phone may have on the user."  Dr. Hyland also recommended that

17   consumers be warned that the use of protective devices, such as headsets, "afford no protection

18   against the low frequency pulsed magnetic field from the battery of the phone."  The report points

19   out that "*identical* exposure to exactly the *same* radiation can entail quite different (non-thermal)

20   responses in different people . . . [which is] consistent . . with the fact that not every exposed

21   person is adversely affected (as where not all smokers get lung cancer!).  Thus, the report says "it

22   must be concluded that such a risk does indeed exist."

23   35.  The SAR standard does not consider the non-thermal effects of RF radiation on health.  The

24   scientific studies of the non-thermal effects of RF electromagnetic waves on tissue show DNA

25   breaks, interruptions in communications between cells that may lead to uncontrolled cell growth,

26   major physiological changes, interference with the blood brain barrier, mutations of DNA and

27   chromosome structure, increase in calcium efflux, adverse impact on the immune system,

28   destruction of blood cells, and other effects.  These biological effects are warnings of a serious

Brower v. Motorola
First Amended Complaint                    11

Exhibit C
Page 25

1    risk of human illness, including cancer.

2    36.  Plaintiffs are informed and believe and thereon allege that ANSI and IEEE failed and refused

3    to consider this highly relevant scientific information (including, but not limited to, the information

4    set forth in paragraph 39 below) which indicated a probability of risk of harm to human health

5    from non-thermal RF radiation.  ANSI and IEEE also did not consider the effects of the magnetic

6    field from PCT batteries (ELF) on human health or EFL radiation from the PCT.  The plaintiffs

7    are informed and believe and thereon allege that the defendants were at all times well aware of all

8    of the above information and the potential for adverse health consequences and acted to prevent

9    consideration of such effects by ANSI and IEEE and to suppress such information from the

10   public.

11   37.  From approximately August 8, 1994 to September 7, 1995, Plaintiff Gibb Brower subscribed

12   to cellular telephone service in San Diego from defendant U.S. Wireless for use in his business.

13   He purchased a new Motorola PCT from U.S. Wireless in August of 1994, which he used in

14   connection with their cellular service.  Motorola's own tests show that PCT model sold to

15   plaintiffs (called "'hot' UTAC Lite" by Motorola) operates above the 1992 ANSI SAR level.

16   Plaintiffs were never informed by any of the defendants of this fact.

17   38.  After the cellular system was sold  to GTE Mobilnet, Mr. Brower continued to use the same

18   PCT up until approximately March 1999, when he purchased a PCT manufactured by Sony from

19   GTE Mobilnet.  Although Mr. Brower ceased using his PCT in April, 2000, he continued to

20   subscribe to cellular service from GTE Mobilnet and then GTE Wireless until March of 2001

21   because his PCT telephone number was in wide circulation to his business customers and he was

22   able to pick up voice mail messages from these customers using the wireline telephone system.

23                    **DEFENDANTS' KNOWLEDGE OF THE HEALTH RISKS**

24   39.  At all times herein mentioned, defendants' were aware of numerous studies and experiments

25   that demonstrated the health hazards of RF radiation dating back to the late 1940s.  Defendants'

26   prior knowledge of these studies included, but was not limited to, the following:

27                    (a)  In 1928, Helen Hosner, a researcher at the Albany Medical College, showed

28              that radio waves were capable of heating body tissue in a study investigating the effects

Brower v. Motorola
First Amended Complaint                    12

Exhibit C
Page 26

of experimental short wave radio transmitters on workers at a General Electric research facility. Her work was entitled "Heating Effects Observed in a High Frequency Static Field," was published in Science.

(b) In a 1948 article published in the archives of Physical Medicine, it was reported that electromagnetic radiation at 2,450 MHz was "highly productive in producing lenticular opacities."

©) In 1952, researchers noted that "experiments in which the head area alone was directly irradiated suggests that the fatal outcome was the result of an excessive rise in brain temperature. The lethal effects of irradiation to a limited area of the body are different from those in which the entire animal is exposed." That warning was published after researchers had exposed laboratory rats to a few seconds of intense exposure of radio frequency radiation. The warning was published in Microwave Radiation: Biophysical Considerations and Standards Criteria, IEEE Transactions on Biomedical Engineering.

(d) In 1955, researchers Schwan and Piersol published their work that radio frequency energy, in a broad range from 500 MHz to 1000 MHz is preferentially deposited beyond the skull and absorbed into the brain.

(e) In 1962, it was known in the scientific community that radio frequency energy is most efficiently absorbed into human tissue and is capable of producing undesirable effects.

(f) It was well known in the scientific and medical communities in the 1970s that an antenna is the most efficient means of depositing energy into the human body and penetrating human tissue.

(g) In 1971, A.W. Guy published in IEEE Transaction in Microwave Theory and Techniques that in order to obtain selective heating, "hot spot" heating, it is necessary to expose the tissue to the near zone fields of the energy source, namely the antenna. From this experimental data at 433 MHz, 750 MHz, and 918 MHz the research confirmed that energy is readily absorbed from the induction fields in the

Brower v. Motorola
First Amended Complaint                        13

Exhibit C
Page 27

near zone.  The absorption within the brain was found to be about 20 times greater than that of the skull and subcutaneous fat.

(h) In 1972, in a study by I.J. Bahl, it was demonstrated that frequencies between 700 megahertz and 1000 megahertz interact most efficiently with human tissue to yield the greatest energy absorption and that the temporal lobe of the brain is the most sensitive area of the body to this type of radiation.  The work performed by Bahl was published in IEEE Transactions on Microwave Theory and Techniques, a publication accepted as authoritative in the medical and scientific communities.

(l)  In March of 1976, the US Defense Intelligence Agency reviewed the biological effects of non-thermal exposure to microwave and RF radiation.  In part this review states:

> "The potential for development of a number of antipersonnel applications is suggested by the research published in the USSR, East Europe and the West. Sounds and possibly even words which appear to be originating intracranially can be induced by signal modulation at very low average power densities.. Combinations of frequencies and other signal characteristics to produce other neurological effects may be feasible in several years.  The possibility of inducing metabolic disorders also suggested.  Animal experiments reported in the open literature have demonstrated the use of low level microwave signals to produce death by heart seizure or by neurological pathologies resulting from breaching of the blood-brain barrier."

(j)  In 1977, J.C. Lin published the results of his research in IEEE Transaction on Microwave Theory and Techniques.  Results revealed that because microwave absorption occurs in a very short time there is little chance for heat conduction to take place; the conduction of heat takes much longer.  At "hot spots" the inability of biological tissue to get rid of excess heat quickly and efficiently may be yet another mechanism leading to destructive exposure.

(k) Research confirmed that "hot spot" absorption is dependent on the diameter of the head model which was used.  As the diameter decreased the absorption effect became more pronounced.  Most notably, the greatest absorption enhancement occurs at frequencies between 800 MHz to 1000 MHz, effectively covering the portable cellular telephone transmit band.

Brower v. Motorola
First Amended Complaint                          14

Exhibit C
Page 28

(l) In 1977, O.P. Gandhi published a study in Radio Science which confirmed that radiation absorption enhancement occurs when subjects are close to reflecting surfaces.  Gandhi reported a measured energy absorption enhancement factor of as much as 27 in close proximity to corner shaped reflectors and about 4.7 for flat reflectors.

(m) In 1978, Motorola studied the efficiency of the antenna and learned that the maximum Specific Absorption Rate exists at the antenna "feed point."

(n)  Long before the introduction of cellular telephones, researchers provided data indicating that children absorb approximately 50% more radiation within their heads than do adults.  The research performed by C.H. Durney, reported in IEEE Transactions on Microwave Theory and Techniques in 1979, only took into consideration the plain wave far field exposures and did not include any of the enhancement effects that are introduced by the near zone operation of cellular telephones.

(o) In 1979, researchers Sheppard, Bawin and Adey confirmed in a published article that low intensity modulated (16 Hz) 450 MHz fields produced modified calcium efflux through brain cell membranes.  The researchers observed the effect for power density levels lower than 2.0m W/cm2.  The work was published in Radio Science in December 1979.

(p)  In 1979, in an experiment by J.L. Meyerhoff,  laboratory rats were killed quickly to prevent unwanted changes in brain structure.  It was reported that "it is preferable to focus the microwave energy into the head of the animal, thereby increasing the efficiency of the energy delivered to the brain."  The experiment was published in IEEE Transactions on Microwave Theory and Techniques in January, 1980.

(q) The cellular phone industry conducted extensive research in the early 1980s on the effects of antennas and discovered that there is a large amount of stored energy that is disposed immediately around the antenna of a cell phone.

(r) In follow up research, Adey published in 1980 research demonstrating modifications in brain cells at low level radiation exposure.  Adey also reported that weak modulated frequency radiation results in major physiological changes.  The work

Exhibit C
Page 29

was published in Proceedings of the IEEE, January 1980.

(s)  In 1981, a Motorola researcher was quoted in IEEE Transactions on Vehicular Technology (November) "the proposed standard recognizes the possibility of encountering fields higher than the maximum of the protection guides in the close vicinity of low power radiators, like portable communication equipment.  For this reason, an exclusion clause for devices operating at 1 GHz or less end with less than 7 watts output power has been proposed.

(t)  At the same time, Motorola researchers publically stated "the Radio Frequency Protection Guides of the American National Standards Institute at 750 MHz would be violated at .03 centimeters distance by a resident dipole radiating about 1mW and at .5 centimeters distance by a radiated power of 4mW." "A resident dipole provides the most favorable condition of minimum stored energy around the antenna." The researchers conceded that "a rigorous enforcement without exclusion of the radio frequency protection guides would render portable radios practically useless."

(u)  In an article published in 1981 in IEEE Transactions of Vehicular Technology, a prominent Motorola employee stated, "this paper addresses the question of how long the power radiated by a dipole has to be so that the field near the antenna never exceeds ANSI-Proposed Protection Guides for distances greater than .3 centimeters, which is the spacing which at times separates the antenna from the head of the portable radio user.  Radiated power of a few milliwatts is enough to exceed the proposed radiation protection guides at 750 MHz.  Such reticence in accepting the clause probably resides in the fact that the near field of antennas is largely un-investigated."  At the same time, a prominent Motorola researcher stated, "the study of the near field has been substantially neglected."  The same prominent Motorola researcher stated, "dipole antennas, although extensively used in portable and mobile communications, have not been carefully investigated in the near field."

(v)  In 1981, during the time that the exclusion of portable cellular phones was debated within the ANSI Committee, a Motorola researcher was quoted as stating,

**Exhibit C**
**Page 30**

"strict enforcement .. technically forbids the exposure to a resident dipole about 19 centimeters long, radiating 1mW."

(w)  In 1982, Motorola researchers found that as little as 250 micro Watts radiated power would be enough to exceed the safety standards established by the American National Standards Institute when using the helix antenna as the radiator for near zone exposure.  The study was published in IEEE Transactions on Vehicular Technology in November, 1982.

(x)  The Motorola researchers found that the exposure to the helical antennas yields a power density of as much as 127mW.cm2 when the antenna is placed about 1 centimeter distant.  The radiated power was only .02 Watts, which is thirty times less than what is radiated from a portable cellular phone.

(y) In 1984, in an article published by Microwave News, there was a report of a 1984 study by the United States Air Force in which it was found by Dr, Vernor of the University of California "findings of excess malignancies in the exposed animals is provocative" after being exposed to radio frequency radiation.

(z) In 1986, the United States Air Force sponsored a study by A.W. Guy in which 100 rats were irradiated over a three year period and compared to 100 rats that were not exposed to radiation but were otherwise treated identically.  After the experiments were completed the researchers reported that 19 malignant tumors developed in the exposed rats as compared to 5 in the control group rats.  The researchers claimed that such a difference was "statistically highly significant."  They also stated, "at face value this last finding suggests that low levels of microwave radiation can cause cancer in mice."  Remarkably, the Environmental Protection Agency accepted a report by the same researchers who suddenly "corrected" their conclusions.  The EPA in 1986 stated that evidence of carcinogenicity must be confirmed to a specific tumor type.

(aa)  In 1989, Stephen Cleary presented a review of the state of research related to non-thermal interactions and effects of radio frequency radiation.  He

Exhibit C
Page 31

concluded, "cellular studies provide convincing evidence that RF radiation, and other types of electric or magnetic fields, can alter living systems via direct non-thermal mechanisms, as well as via heating."

(bb) In 1992, a project performed by A. Maes confirmed a marked increase in the frequency of chromosomal aberrations and the presence of micro nuclei in peripheral blood after exposed to 2,450 MHz radiation.

(cc) In 1992, F. Montecchia published an article in IEEE Transactions on Biomedical Engineering that some antennas are specifically designed to use the non radiating induction energy (around the antenna) for penetration into humans. One such antenna was specifically developed to provide an improved method for depositing energy into tissue for hyperthermia treatment.

(dd) In 1992, it was reported in Microwave News, a news publication widely circulated and read by the scientific and medical community, that Keith Angstadr, an antenna technician, was treated at Johns Hopkins University for exposure to radio frequency radiation which led to his loss of night vision and color blindness. The retinas of his eyes had sustained 5 mW/cm2 of continuous wave radiation.

(ee) The medical and scientific communities were well aware of the extensive research published and reported throughout the 1950s and 1960s of the dangers of causing burns when RFR is applied over a bony prominence. It was revealed that non-uniformities such as bone ridges and irregular fat layers caused the energy to be absorbed non-uniformly within the body or head.

(ff) In 1993, N. Kuster published an article in IEEE Transactions on Biomedical Engineering which demonstrated the very high level of energy absorbed into the head and brain in the area close to the location of the antenna. Kuster reported that the maximum SAR measured in models of human heads exposed to 1 Watt of energy was 5 mW/g. The antenna employed was approximately one inch from the head of the model.

(gg) In December 1993, Chergrinets reported that pulsed 150 to 300 MHz at

Exhibit C
Page 32

5 mW/cm2 caused chromosomal changes in human peripheral lymphocytes and whole blood cells.

(hh) The Defendants knew that early in 1994 research performed in India by Sarkar, et al. confirmed that DNA modifications result from low-level exposure to radio frequency radiation. Clearly, if radio frequency radiation can rearrange the DNA in tissue then it can initiate cancer.

(ii) In 1994, Henry Kues, a Johns Hopkins researcher, reported cell destruction and cell death comparable to that which would be expected from ultraviolet radiation was reported from exposure of rhesus monkeys to 1,250, 2,450 and 2,850 MHz radio frequency radiation. In a 1980 addition of IEEE Proceedings, it was reported that radio frequency radiation may inactivate enzymes or proteins that are involved in the repair processes. In 1984, two researchers, Dr. Chang and Dr. Milham, made a presentation to the Annual Bioelectromagnetic's Society Conference in which they revealed an increase in malignant tumors in rats after long term exposure to radio frequency radiation in experiments they conducted.

(jj) In 1994, L. Verschaeve documented evidence that human and rat blood samples exposed to 450 and 954 MHz radiation provided induced DNA breaks. The research by Verschaeve is but one of many similar reports that became known during 1994 and which supports the earlier findings of Cleary.

(kk) In an alarming report, D.C. Cain disclosed in 1994 that 837 MHz radiation at a power density exposure level of 3.7 mW/cm2 produced a 40% increase in what researchers refer to as "focus Formation." These researchers explained at the 16th Annual Bioelectromagnetics Society that the radio frequency radiation was acting as a co promoter for cancer formation.

(ll) On or about June 12, 1994, that the notable researcher Henry Lai, (and others) presented a report that indicated low-level (0.6 mW/g SAR) radio frequency radiation exposure at 2450 MHz resulted in memory deficits for experiments conducted with rats. This was a follow-up presentation of an article by Lai, Horita & Guy

Exhibit C
Page 33

published only a few months earlier that provided substantially the same information. The memory deficits were observed as an inability of the rats to perform in a maze experiment. In effect, the rats forgot their way around a familiar area. The researchers explain the effect as being caused by a decrease in brain activity. The low-level radiation exposure is extremely significant. Virtually all operators of Cell phones subject themselves to such exposure and energy absorption while operating the phone. Further, the memory deficits do not stop when the exposure ends. Researchers have learned that the effect persists for five days or more.

(mm) Late in 1994 Lai and Singh make known the results of their research which should have been received as conclusive proof that cellular phone radiation is capable of causing harmful biological effects. The researchers reported in the International Journal of Radiation Biology that low level exposure to radio frequency radiation causes an increase in single and double strand breaks in DNA.

(nn) Lai and Singh repeated their earlier experiment with similar results in 1996. In 1997, Repacholi published the results of his work that demonstrated that mice exposed to low levels of 900 MHz radiation exhibited a higher incidence of cancers than did their non exposed laboratory counterparts.

(oo) During a massive six-year study funded by CTIA, the epidemiologist in charge of the study concluded that there was significant evidence that PCT use is a cause of brain cancer. That study found a statistically significant increase in the incidence of a rather rare kind of tumor in the periphery of the brain where the radiation has the greatest access, i.e. the plume. (This is same location and type of tumor as Plaintiff Gibb Brower's tumor).

(pp) The majority of the epidemiological studies which have been conducted show a statistically significant increase in brain cancer related to PCT use.

## DEFENDANTS' CONSPIRACY TO PERSUADE, INTIMIDATE AND ALTER ADVERSE HEALTH EFFECT FINDINGS

1  40.  Plaintiffs are informed and believe and thereon allege that, for fear that the findings of

2  adverse health effects by use of PCTs might damage market development, the defendants'

3  conspired to alter the results of studies to make them more "market friendly," and acted to

4  conceal and suppress information from the public. Researchers who discovered adverse effects

5  associated with PCT use, lost their funding, were fired, found their reputation damaged, and had

6  their work denigrated. Motorola researchers concealed from the public the enhancement effects

7  of antennas and the efficiency with which antennas deposit energy into brain tissue.

8  41.  Almost all of the research funding concerning RF radiation comes from the wireless

9  industry.  Plaintiffs are informed and believe and thereon allege that in instances where there have

10  been adverse findings, the defendants have worked to prevent funding to replicate that study.

11  This is part of defendants' larger effort to "create and control the science" and introduce

12  confounders in the way of researchers. Plaintiffs are further informed and believe and thereon

13  allege that the defendants' tactics and conduct included, but were not limited to, the following:

14  (a) On or about late 1993/early 1994, the cell phone industry, including the named

15  defendants, through CTIA, organized a committee which was to draft a manual to

16  discuss "responsible" PCT use.  After receiving a draft of the manual, Thomas Wheeler,

17  president of CTIA, sent out a memorandum expressing his concerns over certain

18  language used in the manual which acknowledged and/or implied that the use of PCTs

19  could pose health risks.  An example of such substantive changes follows, with the

20  suggested deletions put forth in bold typeface:

21  Do not operate your transportable cellular telephone when holding the antenna, or when
any person is within 4 inches (10 centimeters) of the antenna.  **Otherwise you may**

22  **impair call quality, may cause your phone to operate at a higher power level than**
**is necessary, and may expose that person to RF energy in excess of the levels**

23  **established by the updated ANSI Standard.**

24  **If you want to limit RF exposure even further, you may choose to control the**
**duration of your calls or maintain a distances from the antenna of more than 4**

25  **inches (10 centimeters).**

26  For best call quality, keep the antenna free from obstructions and point it straight up."

27  (b) Gandhi, a researcher for Motorola, published findings of his research that were

28  contradictory to Kuster's.  Gandhi reported that the maximum SARs within the human

Brower v. Motorola
First Amended Complaint                    21

**Exhibit C**
**Page 35**

brain would be about 30 times lower than what Kuster had reported. But by March of 1994, the word in the research community had spread that the Gandhi team had, in fact, misstated SAR figures. During the 1994 Bioelectromagnetics Society 16th Annual Conference, Gandhi produced findings of still higher maximum SARs for the same research. During his presentation, SARs corresponded, at times, to levels as much as ten times higher that were previously reported. The conference results, presented in Copenhagen, Denmark, never reached the U.S. audience. In a letter to the FCC, August 1994, Gandhi explained the nature of the errors and revised his experimental results upward. That is, nearly a full year after the initial false claims of safety - and almost six months after his revisions first became known, the Gandhi team provided an official correction.

©) The Defendants acted in a fraudulent, deceitful, intimidating, illegal, and harassing manner to a researcher by the name of Dr. Jerry L. Phillips, who essentially replicated the DNA damage studies of Lai and Singh and reached the same conclusions, i.e. exposure to low levels of radio frequency radiation causes DNA damage which can develop into cancer.

(d) Motorola willfully and wantonly attempted to suppress information from plaintiffs, its other customers, the public, and government regulatory agencies by making illegal threats and illegal acts of intimidation upon Dr. Phillips.

(e) After completion of his research, Dr. Phillips expressed his desire to publish said research. Initially, Motorola told Dr. Phillips that it was too early to publish his results and that he needed to do more research. When Dr. Phillips refused to "spin" his research, as demanded by Motorola, Motorola cut off Dr. Phillips' funding. Additionally, Motorola threatened to discredit Dr. Phillips in the scientific community, as well as to ruin his career.

(f) After leading the cellular industry's research effort regarding the health hazards associated with PCT use for a period of six years, Dr. Carlo indicated that PCTs may very well pose health risks to its user. In a response similar to that received by Dr.

Brower v. Motorola
First Amended Complaint                              22

Exhibit C
Page 36

1   Phillips, the cell phone industry cut off Dr. Carlo's funding, attempted to discredit him

2   within the scientific community, and attempted to ruin his career. Motorola willfully

3   and wantonly attempted to intimidate government regulatory agencies, by illegal threats

4   and illegal acts of intimation made upon Dr. George Carlo, a notable public health

5   scientist, epidemiologist, lawyer, founder of Health Risk Management Group, and the

6   individual appointed by the cell phone industry to study the health hazards associated

7   with PCT use.

8   (g) Motorola willfully and wantonly acted in an effort to suppress media reports

9   concerning the risk of adverse health effects from PCT use by threats and intimidation.

10   Specifically, Motorola threatened Channel 4 in Washington, D.C. in an effort to

11   suppress and prevent the dissemination of such information to the public.

## DEFENDANTS' EFFORTS TO FINESSE AND MANIPULATE ANSI AND IEEE AND GOVERNMENTAL AGENCIES

14   42. It is obvious that if the same information about PCTs was available about a new drug or

15   foodstuff, it would never be licensed. However, defendants simply introduced PCTs into the

16   market without any prior oversight from any governmental agency and without environmental or

17   testing for adverse health consequences from electric fields, magnetic fields and electromagnetic

18   fields generated by this equipment and its battery. Once done, the plaintiffs are informed and

19   believe and thereon allege that the defendants set about to co-op the federal agencies which had

20   the jurisdiction to force the industry to prove the safety of PCTs.. Some examples of defendants'

21   conduct includes, but is not limited to, the following:

22   (a) On July 19, 1993, Elizabeth Jacobson, Deputy Director for Science at the

23   Center for Devices and Radiological Health, Food and Drug Administration, sent a

24   correspondence to CTIA president Thomas Wheeler, which clearly identified certain

25   fraudulent and deceitful statements made by the Defendants to the public regarding the

26   "safety" of PCTs. In pertinent part, this letter states:

27   I am writing to let you know that we were concerned about two
     important aspects of your press conference on July 16 concerning the safety of
28   cellular phones, and to ask that you carefully consider the following comments

1

2          First, both the written press statements and your verbal comments
3   during the conference seemed to display an unwarranted confidence that these
    products will be found to be absolutely safe.  In fact, the unremittingly upbeat
    tone of the press packet strongly implies that there can be no hazard, leading
4   the reader to wonder why any further research would be needed at all. (Some
    readers might also wonder how impartial the research can be when its stated
5   goal is "a determination to reassure consumers."  And when the research
    sponsors predict in advance that "we expect the new research to reach the
6   same conclusions, that the cellular phones are safe.") …

7          We are even more concerned that your press statements did not
    accurately characterize the relationship between CTIA and the FDA ….[S]ince
8   it is not yet clear whether we will help to direct the research program, it is
    premature to state that we will credential the research.

9
The FDA has recently announced that it has been unable to test PCTs to see if they pose a risk of
10
harm from RFR for the past two decades.
11
          (b)   The plaintiffs are informed and believe and thereon allege that the
12
defendants manipulated the research and pressured members of the ANSI Safety
13
Standard Committee to exempt portable cellular telephones from regulation and
14
compliance under the ANSI standards and pursuant thereto took the following action:.
15
          During a 1989 meeting of the ANSI Committee, held in Tucson, Arizona,
16
          cellular phone industry representatives dominated the membership of the
17
          standard setting committee. After a heated discussion and debate over the
18
          exclusion clause it was decided upon a vote by the committee that portable
19
          cellular telephones would not be excluded from regulation or compliance under
20
          the ANSI Safety Standard.  A short time after the meeting, at another quietly
21
          held committee meeting attended by a select, smaller group of members, the
22
          exclusion clause passed, and as a result, cell phones would be excluded from
23
          any testing, compliance, or monitoring by any safety standard,  government
24
          agency, or regulatory body.
25
          (e)  In 1992, ANSI standard was revised to include, for the first time,
26
specific restrictions on the currents induced in the human body by RF fields.  PCTs
27
were again virtually excluded.
28

Brower v. Motorola
First Amended Complaint                              24

Exhibit C
Page 38

## FAILURE TO REASONABLY TEST

43.  The defendants have an obligation to conduct a reasonable amount of testing of PCTs for safety before releasing the product for sale to the public.  The plaintiffs are informed and believe and thereon allege that the defendants' researchers found that the measured radiation levels from PCTs exceeded ANSI SAR guidelines and should be considered dangerous.  Plaintiffs are further informed and believe and thereon allege that at this point, defendants determined that "lack of knowledge" was preferable to more extensive and revealing testing and they decided to go forward with the production, sale and distribution of PCTs.

44.  SAR testing is performed on a biological model called a "phantom" using a PCT antenna placed nearby which is sending electromagnetic radiation.  Measurements are then made of the magnetic fields which are reflected from and absorbed by the phantom.

45.  SAR results can be easily manipulated by changing the distance between the antenna and the phantom.  For example, when the distance becomes smaller than 3 cm, the reflected signal increases to more than 25% and the probe receiving the magnetic fields for the calculation of the antenna currents results in being measured smaller than the actual value, which leads to a large SAR error.

46.  As mentioned above, the medium used in the phantom is either semi-liquid or jell material.  Over time this medium develops air pockets and become contaminated.  Such air pockets and contamination serve to reduce the magnetic field reaching the probe and the result is a smaller than actual heating value is reported.

47.  The plaintiffs are informed and believe and thereon allege that defendants are well aware of the above problems concerning SAR testing and that they have used these variables to report SAR values which are below actual values and that such actual values exceed the SAR limits.

## DEFENDANTS HAVE HAD THE ABILITY
## TO REDUCE OR ELIMINATE THE HEALTH RISK

48.  At all times herein mentioned, defendants' were aware of numerous solutions that could virtually eliminate any health hazards of radiation from PCTs solutions such as shielding, antenna phasing, use of low reluctance material to influence the radiation pattern, shrouds, canting, etc.

Brower v. Motorola
First Amended Complaint                    25

Exhibit C
Page 39

1   Plaintiffs are informed and believe and thereon allege that defendants could have incorporated

2   one or more of these safety features in PCTs at minimal cost but instead engaged in a cost-

3   benefit analysis balancing human lives and health against corporate profits.  Defendants' prior

4   knowledge of these solutions included, but was not limited to, the following:

5          (a).  On October 24, 1991, Hitachi received a patent to reduce the PCT user's

6   exposure to RF radiation "to prevent the health of the user from being injured."

7          (b).  On August 11, 1992 Mitsubishi was issued a patent for a cordless

8   telephone designed to "reduce the effect of an electromagnetic wave onto a head of a

9   human body" by coating the handset with shielding material on the side closest to the

10  user's head.

11         ©).  On December 26, 1995, Motorola filed a patent wherein "a high magnetic

12  permeability/low reluctance material is incorporated into an antenna to limit radiation,

13  where radiation is not desired."

14         (d).  On February 20, 1996, Alcatel N.V. was granted a patent "for protecting

15  a portion of the human body of a user of the transmitter against the radiation from said

16  internal radiating system."

17         (e).  On April 9, 1996 a patent was issued to Kevin and Norval Luxon for

18  shield apparatus which utilizes electromagnetic radiation absorbing materials "disposed

19  about the antenna and portable wireless transmitting apparatus and between the user

20  and the antenna and transmitting apparatus to shield or protect the user from the

21  potentially harmful radiation emissions from the wireless communication apparatus."

22  The Motorola patent referred to above lists the Luxon patent as prior art. Plaintiffs

23  are informed and believe and thereon allege that the Luxon invention had been

24  presented to Motorola and discussed with its engineers prior to the grant and

25  publication of that patent.

26         (f).  On June 4, 1996, Ericsson received a patent for an output power

27  controller to assure "that the average RF-exposure levels from . . . cellular hand-held

28  radio telephones do not exceed a predetermined level."

Brower v. Motorola
First Amended Complaint                           26

Exhibit C
Page 40

(g).  On August 13, 1996 Catholic University received a patent for the "protection of living systems from adverse effects of electric, magnetic and electromagnetic fields."  The application for the patent states "extensive experimental evidence has shown that exposure to ELF electromagnetic fields can lead to changes in biological cell function.  [references].  Similar effects have been demonstrated from exposure to modulated microwaves and RF signals. [references].  Since ALL (PCTs) transmit modulated microwave or RF signals the potential induction of bioeffects through the use of these devices is evident."

(h).  On September 23, 1997, Motorola filed a patent for an antenna with an absorptive electromagnetic shield which results in "little to no radiation directed towards the body of the user."

(I).  On September 25, 1997, Motorola submitted a patent application wherein "a high magnetic permeability/low reluctance material is incorporated into an antenna to limit radiation, where radiation is not desired.."

(j).  On July 28, 1998, Nokia received a patent for a shielding layer between the antenna and the user to reduce the electromagnetic irradiation of the user.  The application says the PCT antenna is "few centimeters from the brain, the hearing organs, and the organ of equilibrium.  Although a direct heating effect could be left without further consideration it has been suggested that modulated radio frequency radiation induces changes in the electrical status, i.e. in the ion balance of nerve cells.  A continuous localized exposure to radio frequency irradiation has been suggested to weaken myelin sheets of cells and to eventually lead to an impairment of hearing capability, vertigo, etc.  It has been suggested that radio frequency irradiation may stimulate extra growth among supportive cells in the nerve system, which in the worst case it has been suggested could [lead] to a development of malignant tumor, e.g. glioma form supportive cells."

(k).  On December 29, 1998 Nokia received a patent for an accessory RF unit which "decreases radiation directed towards the user's head."

Exhibit C
Page 41

1     (l). On November 16, 1999, Ericsson Inc. received a patent for an antenna

2     switch to prevent PCT from being used unless the antenna is fully extended. The patent

3     application states that if the antenna is not fully extended "the antenna will be in

4     undesirably close proximity to the user';s head, thereby increasing the user's specific

5     absorption rate (SAR) of electromagnetic energy emitted from the antenna."

6     (m). On January 25, 2000, Nokia received a patent for a PCT alarm system so

7     that the user may "reduce to a minimum the SAR value and the quantity of radiation

8     directed at his head or body by employing the correct appliance position and

9     situations and by adjusting the transmission time."

10     (n). On February 29, 2000, Centurion International, Inc. received a patent for

11     an antenna to "tailor the radiation characteristics of the antenna in such a way as to

12     decrease the specific absorption rates (SAR) to the user of the" PCT. The patent

13     application states "questions have arisen concerning the possibility of harmful effects of

14     electromagnetic energy on the human body inasmuch as handheld ratios, cellular

15     telephones and other portable wireless communication devices do emit electromagnetic

16     energy. Many studies have been conducted to closely examine the effects of

17     electromagnetic energy on the human body to determine a safe level of exposure and

18     how to accurately measure the level. In conjunction with this, there have been some

19     attempts to move the source of electromagnetic energy away from the body by means

20     of the antenna location or design.."

21  49. At all times herein mentioned, intellectual property claims were closely monitored by

22  defendants and they were well aware of the above listed patents, and others, that recognized the

23  adverse health effects from use of PCTs.

24       **MISREPRESENTATION AND FAILURE TO DISCLOSE**

25  50. Plaintiffs are informed and believe and thereon allege that the defendants' strategy has been

26  to aggressively market and sell PCTs and related service by misleading and misinforming

27  potential users about the products and by failing to protect users from potential dangers, which

28  defendants knew or should have known to result from use of these products.

Brower v. Motorola
First Amended Complaint           28

**Exhibit C**
**Page 42**

51. Defendants widely and successfully marketed PCTs in California. Defendants undertook an advertising blitz extolling the virtues of PCTs in order to induce widespread use of the product. The defendants' marketing campaign consisted of advertisements on television, radio, and the Internet, promotional literature to be placed in the printed media, and in other advertising media, and other promotional materials to be provided to potential users of PCTs.

52. CTIA and CCAC have been in the forefront of the industry's public relations program to reassure the public of the absence of risk of harm from PCT use. A standard press release by CTIA states that "after years of substantial research, scientists and governments around the world continue to reaffirm that there is no public health threat from the use of wireless phones." CCAC states "[t]here's study after study and the accumulation of all these studies have shown that there are no adverse health effects that have shown anything at all from the cell phones." A Motorola executive announced to the news media that "thousands of studies" had already shown cellular phones were safe. These statements were false and misleading and made in willful and wanton disregard of the right of the plaintiffs and the class to be aware of the risks associated with the use of PCTs.

53. The plaintiffs are informed and believe and thereon allege that the defendants have and continue to manipulate the science to the detriment of consumers by failing to reveal all relevant findings and by selectively withholding important public health information from the public and plaintiffs.

54. For example, the defendants did not tell plaintiffs, or the class, that:

        (a) The ANSI standards for RF radiation have:

                (I) consistently been revised downward;

                (ii) do not consider the differences between pulsed and analog signals;

                (iii) do not include consideration of the properties of the near field, which is the radiation next to the user's head;

                (iv) do not include consideration of the effect of the stored energy around the antenna of the PCT;

                (v) do not consider the effect of different types of PCT antennas;

Exhibit C
Page 43

(vi) do not consider relevant scientific studies;

(vii) are based on "one size fits all model" based on an atypical cadaver that is not relevant to the average adult male and does not account for the substantial physical differences between the size, shape and permeability of the heads of females, teenagers and children; and

(viii) are used in tests which are known to be inaccurate, subject to manipulation and contamination;

(ix) do not reveal "hot spots;" and,

(x) does not take into account that there is a wide range of individual tolerance to RF radiation as the result of the differences body cell water, fat content and other factors.

(b)  That despite the adoption of the 1992 ANSI guidelines in 1996, PCTs manufactured prior to that date did not necessarily meet those standards.

(c)  The plaintiffs are informed and believe and thereon allege that the model PCT purchased and used by Plaintiff Gibb Brower in 1994 had a SAR level above the level set by the 1992 ANSI guidelines.

(d)  The PCTs sold to Plaintiff Gibb Brower are equipped with a retractable whip antennas.  During the SAR testing such antennas are fully extended.  If the antenna is not extended to its full length, the radiation point will be in an undesirable close proximity to the user's head and there will be a more focused and intense level of electromagnetic energy emitted from the antenna into the brain.  Although it is possible to disable the antenna unless it is fully extended, this was not done in the PCTs purchased by Plaintiff Gibb Brower and other members of the class resulting in this inherent defect.  Furthermore, the defendants did not tell plaintiffs that the PCT antenna should be extended when the device is in use.

## RELIANCE

55.  Mr. Brower is 41 years old and owns a landscape business in San Diego. He used his PCT on defendants' cellular system on a more or less continuous basis in the course of his daily

Brower v. Motorola
First Amended Complaint                    30

Exhibit C
Page 44

1   business.  Defendants were aware of the large number of minutes of airtime for long periods used

2   by Mr. Brower.  None of the defendants ever told the plaintiffs or members of the plaintiffs class

3   that there was a risk of harm associated with long and continuous PCT use, or that they should

4   use a headset or hands free device or take other precautionary measures to reduce the radiation

5   exposure from PCTs.

6   56.  Plaintiffs and members of the class relied on the defendants' statements that PCTs were

7   totally safe to use in making their decision to purchase and use PCTs.  Plaintiffs and members of

8   the class would not have purchased a PCT or used a PCT had they been informed of the studies

9   which show that RF radiation from PCTs penetrates into the brain.  Nor would plaintiffs or

10  members of the class have purchased or used a PCT had they been aware of scientific studies that

11  indicate RF radiation can cause biological changes which increase the vulnerability to disease.

12  57.  Plaintiffs and the class were entitled to be fully informed concerning the myriad of other

13  scientific studies, clinical observations, and hypotheses by noted scientists and engineers before

14  they consented to exposing themselves to any risk of harm from his use of PCTs.  Had the

15  information set forth above been disclosed to plaintiffs they would have ceased using their PCTs.

16                          **CLASS ACTION ALLEGATIONS**

17  58.  Plaintiffs bring this action individually and on behalf of plaintiffs' class, consisting of all

18  persons who purchased PCTs in the State of California since August 8, 1994.  Excluded from

19  this class are the defendants herein, members of their immediate families, any entity in which

20  defendants have a controlling interest, the legal representatives, heirs, successors, or assigns of

21  any such excluded party, the affiliates and co-conspirators of any defendant or anyone who is

22  otherwise involved in the wrongdoing alleged herein.

23  59.  The class is composed of several hundred thousand persons, probably exceeding on million,

24  the joinder of which is impracticable.  The disposition of their claims through this class action

25  will benefit both the parties and this Court.  The identities of individual members of the class are

26  ascertainable through the billing records of the defendants.

27  60.  The questions of law and fact common to the class predominate over questions which may

28  affect individual class members.  Plaintiffs are asserting claims that are typical of the claims of the

Brower v. Motorola
First Amended Complaint                            31

Exhibit C
Page 45

1   entire class and plaintiff will fairly and adequately represent and protect the interests of the class

2   in that they have no interest antagonistic to those of the class.  Plaintiff has retained counsel who

3   is competent and experienced in the technology which is at the core of this case.

4   61.  Plaintiffs and the class have suffered irreparable harm and damages as a result of defendants'

5   unlawful and unfair conduct.  Absent a class action, the defendants will retain millions of dollars

6   received as a result of their wrongdoing and will succeed in their effort to avoid performing their

7   duty to develop an accurate standard and test and will avoid the actions necessary to produce a

8   safe PCT that does not radiate into the person of the user.  Because of the complexity of the

9   issues, few, if any, class members could afford to seek legal redress for the wrongs complained of

10  herein.  Absent a class action, the class members will continue to be unknowingly and unwillingly

11  exposed to radiation which carries a risk of harm to their health.  Defendants continue, to this

12  day, to deny wrongdoing and continue to engage in the tortured, tortuous, unlawful and unfair

13  conduct which is the subject of this complaint.

14                                          **RELIEF**

15  62.  Plaintiffs seek damages on behalf of plaintiffs' class  in an amount sufficient to conduct

16  independent studies to: (a) determine the characteristics and power density of the near field and

17  ELF radiation from PCTs; (b) determine the characteristics and power density of the stored

18  energy field around the antennas of PCTs; (c) determine the difference in characteristics and

19  power density from the different antennas commonly in use on PCTs manufactured and sold by

20  defendants to members of the class; (d) develop accurate SAR formulas based on the physical

21  characteristics of average head size, shape and characteristics of: adult males, adult females,

22  teenagers and children, taking into account "hot spot" formation; and, (e) to conduct scientific

23  studies as may be necessary to determine the risk to health to members of plaintiffs' class by

24  reason of the effects on the human body of all forms of electrical and magnetic exposure from

25  PCTs, including, but not limited to analog, digital, non-ionizing and ELF signals.

26  63.  Plaintiffs seek damages in an amount necessary to monitor and test plaintiff Gibb Brower

27  and members of plaintiffs' class for any adverse health effects arising out of their use of PCTs.

28  64.  Plaintiffs seek relief under Business & Professions Code section 17200 and Civil Code

Brower v. Motorola
First Amended Complaint                          32

Exhibit C
Page 46

section 1750, et. seq., including, but not limited to, an injunction requiring the defendants to fully inform members of plaintiffs' class of any and all scientific and epidemiological studies which indicate a potential risk of harm to their health from PCT radiation, excluding any PCTs which have been equipped with shielding devices that prevent RF and ELF radiation from entering the user's body, and warn class members that the standards and methods used to test their PCTs are unreliable.

65.  Plaintiffs seek punitive damages in an amount sufficient to deter the defendants' malicious and irresponsible corporate policies, which have made uninformed guinea pigs of the plaintiffs and the plaintiffs' class, to be awarded to plaintiffs and to each class member.

66.  Plaintiffs are informed and believe and thereon allege that the heating and other non-ionizing effects of RF and of ELF radiation from Gibb Brower's PCTs, altered or injured the cells in his head and/or altered or reduced the protective mechanism of these cells, thereby  increasing his exposure to free radicals and other elements which can cause brain cancer and other illness. Plaintiffs are further informed and believe and thereon allege that said radiation was a contributing cause of Gibb Brower's brain tumor and they seek damages related to such illness and injury.

67.  Plaintiffs seek restitution of the money paid by them and members of the class for cellular service and for PCTs.

68.  Plaintiffs ask for a permanent injunction enjoining defendants, their partners, joint venturers, agents, servants, employees, and all persons acting under, in concert with, or from them directly or indirectly, or in any manner, in any way engaging in deceptive practices by continuing to advertise to consumers in California that any PCT, which has not been equipped with shielding devices that prevent RF and ELF radiation from entering the users body, is safe.

69.  Plaintiffs ask for a permanent injunction enjoining defendants, their partners, joint venturers, agents, servants, employees, and all persons acting under, in concert with, or from them directly or indirectly, or in any manner, in any way engaging in deceptive practices by continuing to advertise the public that the SAR standard has any validity.

## FIRST CAUSE OF ACTION

**Exhibit C
Page 47**

(Violation of Business and Professions Code Sections 17200, et. seq.)

(Unlawful Business Practices)

70.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 69 of this First Amended Class Action Complaint.

71.  Defendants' acts in setting standards which they knew were based on an inadequate foundation and without consideration of necessary information, in devising test methods which were farcical and wholly inadequate, in falsely maintaining that governments and scientists from around the world had found that PCTs were safe, all were designed to mislead and misinform the public about the safety of PCTs, is a practice which constitutes fraud, deceit and false advertising, in violation of Business and Professions Code §17500.

72.  By committing the acts alleged herein, defendants have engaged in false advertising and unlawful business practices in violation of Business and Professions Code §§17200, et seq.

73.  Pursuant to Business and Professions Code §17203, plaintiffs seek an order of this Court enjoining defendants from continuing to conduct business via their unlawful business practice and continuing to maintain that PCTs, for which a sham standard has been set, which are not properly tested and for which the long term effects of radiation on users has not been fully determined, to be safe and pose no risk of harm.  Further, plaintiffs ask for an injunction requiring defendants to notify the class that there is evidence of a risk of harm to them in using their PCTs and enjoining defendants from refusing to make full restitution of all monies obtained from such users who wish to rescind their service and PCT purchase agreements.

## SECOND CAUSE OF ACTION

(Violation of Business and Professions Code Sections 17200, et. seq.)

(Unfair and/or Fraudulent Business Practices)

74.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 73 of this First Amended Class Action Complaint.

75.  Defendants' acts of continuing to disseminate unfair, deceptive, untrue, or misleading statements about the validity and efficacy of the SAR formula, the accuracy of the methods used to test PCT radiation, the "safety endorsements" of PCTs by governments and scientists world-

Brower v. Motorola
First Amended Complaint                          34

Exhibit C
Page 48

wide, all with the knowledge that relevant elements of PCT radiation have not been analyzed, much less tested or understood, and knowing that no government agency has been able to say that PCTs are safe, and with the knowledge that significant scientific and epidemiological evidence suggests that PCT use increases the risk of harm to the health of the user, constitutes a practice which constitutes fraud, deceit and false advertising in violation of Civil Code §§ 1572, 1710, 1770, and Business and Professions Code §17500.

76. By committing the acts alleged herein, defendants have engaged in unfair and/or fraudulent business practices in violation of Business and Professions Code §§ 17200, et seq.

77. Pursuant to Business and Professions Code § 17203, plaintiffs seek an order of this Court enjoining defendants from continuing to falsely advertise or conduct business via their unfair and fraudulent business practices.

### THIRD CAUSE OF ACTION

(Violation of Consumers Legal Remedies Act, Civil Code Sections 1750, et seq.)

78. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 77 of this First Amended Class Action Complaint.

79. Defendants, and each of them, have engaged in deceptive practices, unlawful methods of competition and/or unfair acts as defined by Civil Code §§ 1750, et seq., to the detriment of plaintiffs and the class.  The following deceptive practices have been intentionally, knowingly and unlawfully perpetrated upon plaintiffs and the class:

a. In violation of Civil Code §1770(a)(5), defendants' acts and practices constitute misrepresentations that the PCTs in question have under gone testing, based on valid standards developed by using all of the scientific data available, which were designed to measure the effects of radiation on all users, including children, and, which testing provides objective results, calculated to meet the requirements of a trustworthy standard, and PCTs have been found by governments and scientists to be safe and not to pose a risk of harm to PCT users.

b. In violation of Civil Code §1770(a)(7), defendants have engaged in deceptive, untrue and/or misleading advertising that PCTs are of a particular standard, quality or grade, when it is of another.

Brower v. Motorola
First Amended Complaint                          35

**Exhibit C**
**Page 49**

c. In violation of Civil Code §1770(a)(9), defendants advertised PCTs which are not as advertised or represented; and

d. In violation of Civil Code §1770(a)(14), defendants have misrepresented that a transaction confers or involves legal rights, obligation, or remedies upon plaintiffs and members of the class regarding the providing of PCTs, when it does not.

80.. As a result, plaintiffs and the class have suffered irreparable harm, entitling them to both injunctive relief and restitution, compensatory and punitive damages, disgorgement of wrongfully obtained profits, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### (Intentional Misrepresentation)

81.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 80 of this First Amended Class Action Complaint.

82.  In order to maintain and/or increase their sales and profits, defendants, through their public statements, advertising, promotional campaigns and marketing, have, by the use of false statements and/or material omissions of fact, have made the following intentional misrepresentations:

a.  That the SAR standards developed and used to test PCTs for all kinds of radiation that might cause harm to the user are true and accurate, and such standards are based a consideration of all scientific and other evidence as well as the average physical structure of all potential users, including children, and were designed to measure all kinds and types of radiation from PCTs;

b.  That true and accurate test procedures and equipment are used to test PCTs in a manner that gives an objective result not is not subject to manipulation or other factors which create false readings;

c. That no RF radiation from PCTs enter the body of the user; and

d. That governments and all scientists from around the world have found that PCTs are totally "safe" and pose no risk of harm whatsoever to the user.

83.  In making these misrepresentations of fact to customers and subscribers, while knowing such representations to be false, defendants have intentionally misrepresented material facts and

Brower v. Motorola
First Amended Complaint                                        36

Exhibit C
Page 50

breached their duty not to do so.  Plaintiff and members of the class have suffered damages by
exposure to RF radiation, without their knowledge or consent, which may pose an increased risk
to their health and by illness, which some have suffered.

### FIFTH CAUSE OF ACTION

#### (Negligent Misrepresentation)

84.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through
83 of this First Amended Class Action Complaint.

85.  In making representations of fact to plaintiffs and the class as described herein, defendants
failed to fulfill their duty to disclose all the material facts as set forth above.  As an actual and
proximate result of defendants' negligence, plaintiff and the class were deceived and misled, and
thereby unaware that:

   a.  The SAR test is a sham;

   b.  SAR testing is wholly inadequate and riddled with deficiencies and subject to manipulation;

   c.  RF radiation from PCTs enters the body of the user;

   d.  There is scientific and epidemiological evidence which demonstrates a risk of harm from RF
radiation; and,

   e.  Governments from around the world have universally said that they cannot say that PCTs
are safe and more testing needs to be done.

86.  Plaintiffs and the class were unaware of defendants' affirmative misrepresentations and
failure to disclose the fact that RF and ELF radiation from PCTs penetrates into the user's body,
that the standards and testing methods used to evaluate the health effects of such radiation are
wholly inadequate and ineffective and that scientific and epidemiological studies have found that
such radiation poses a risk of harm to the health of the user.

87.  Plaintiffs seek an order enjoining the defendants from failing and refusing to:

   a.  Make full restitution of all monies wrongfully obtained by their acts and practices
complained of herein;

   b.  Immediately cease all such misleading, deceptive, and unfair business practices; and

   c.  Disgorge all ill-gotten revenues and/or profits.

Brower v. Motorola
First Amended Complaint                                    37

Exhibit C
Page 51

## SIXTH CAUSE OF ACTION

### (Strict Product Liability)

88.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 87 of this First Amended Class Action Complaint.

89.  Defendants are engaged in the setting of standards, selection of safety features, design, manufacture, testing and sale of PCTs.

90.  Plaintiffs and members of the class purchased such goods from defendants, without knowledge that the same were defective and dangerous.

91.  At all times, plaintiffs and members of the class used defendants' goods in the manner for which they were intended.

92.  As a result of the defective condition of defendants' goods, which existed at the time of manufacture and continued to exist during the use of such goods, plaintiff and members of the class were exposed to penetrating RF radiation without their knowledge or consent, which radiation posed a risk of harm to the health of plaintiff and members of the class.

93.  Plaintiffs do not know the extent of the damage that may have been done to members of the class as a result of such exposure, however, plaintiff Gibb Brower has contracted brain cancer squarely within the plum of the radiation from his PCTs and he is informed and believes and thereon alleges that this radiation was a contributing cause to his illness.  As a result thereof, defendants are strictly liable to plaintiffs and members of the class for injuries sustained, and to be sustained, and the damages incurred thereby.

## SEVENTH CAUSE OF ACTION

### (Strict Product Liability - Failure to Warn and Defective Manufacture and Design)

94.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 93 of this First Amended Class Action Complaint.

95.  Defendants are or were standard setters, designers, manufacturers, suppliers and promoters of PCTs which were manufactured, supplied and promoted by defendants and were placed in the stream of commerce, sold and promoted by defendants.

96.  These PCTs were defective and unreasonably dangerous in that the design and manufacture

Exhibit C
Page 52

failed to include proper and necessary protective shielding or warnings that RF radiation would enter the user's body and has the potential of increasing the vulnerability to adverse health effects.

97. The PCTs were defective in that they were marketed and sold without development of adequate standards, or proper testing or analysis of the characteristics and power of the radiation entering the user's body or consideration of the possible harm to the health of the user.

98. Defendants could have designed and manufactured PCTs so that no radiation entered the user's body.

99. Defendants failed to provide plaintiffs and the class with any protection or warning that RF radiation would penetrate their bodies when they used PCTs or of the possible adverse health effects from such radiation.

100. As a direct result of the defective and unreasonably dangerous conditions of PCTs and the defendants' failure to warn, members of the class have been exposed to radiation that poses a risk of harm to their health. Plaintiff Gibb Brower has developed cancer in his brain, has developed complications related to the cancer, has undergone surgery, radiation and therapy, and suffers from numerous impairments and disabilities, along with sever emotional distress an anxiety.

## EIGHTH CAUSE OF ACTION

### (Negligence)

101. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 100 of this First Amended Class Action Complaint.

102. Defendants owed the plaintiffs and the class the duty of ordinary and appropriate care in setting standards, testing, designing, selecting safety features, manufacture, sale and promotion of PCTs and related transmission services.

103. Defendants failed to fulfill that duty in numerous respects including, but not limited to, the following:

    a. In setting the SAR standard, defendants did not consider the properties of the near field radiation (which is the radiation which actually enters the user's brain), did not consider the

Brower v. Motorola
First Amended Complaint                    39

Exhibit C
Page 53

power or effect of stored energy which collects around the PCT antenna, did not consider the effect of non-ionizing and/or ELF radiation, used a "one size fits all model" based on a very large male cadaver which is not representative of the average adult male (much less females, teenagers and children), did not consider the differences between pulsed and analog signals, did not consider hot spots, did not make any allowance for the fact that there is a wide range of individual tolerance to RF radiation and simply abandoned the process to defendants who had a vested interest in setting a standard that PCTs could "pass."

b. In designing PCTs, defendants neglected to implement appropriate and necessary safety materials and antenna designs that can prevent any radiation from entering the body of the user.

c. In establishing testing procedures to measure the heating component of RF radiation, the defendants concocted a sugar water substance to represent the layers of hair, skin, fat, muscle, fluid and brain cells, which they knew or should have known, would not accurately replicate the propagation of RF radiation waves in the head of the user.

d. In testing PCTs, the defendants used a phantom which contained sugar water subject to contamination, air pockets and other factors which reduced the probability of accurate measurements. Furthermore, this procedure was fraught with error by reason of the fact that the PCT could be position and repositioned until the desired test result was achieved.

e. In marketing PCTs, the defendants failed to provide adequate warning to the plaintiffs and the class that radiation would enter the brain of the user and may pose a risk of harm to their health.

104. As a direct and proximate result of defendants' conduct, the plaintiffs and the class have been exposed to radiation, the full nature and extent of which is unknown, at a time when the science and epidemiological studies show that even low levels of radiation can lead to a number of adverse health effects, including but not limited to: psychological changes, interference with the immune system, increase in calcium efflux, DNA damage, stress response, interference with the blood brain barrier, change in calcium in the heart, enhances cell proliferation. Plaintiffs allege that radiation from his PCTs has precipitated Gibb Brower's brain cancer, which has caused him to suffer economic loss, psychological stress, loss of earning capacity and medical

Brower v. Motorola
First Amended Complaint                    40

Exhibit C
Page 54

1   and related expenses.

## NINTH CAUSE OF ACTION

### (Breach of Express Warranty)

105.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 104 of this First Amended Class Action Complaint.

106. Defendants expressly warranted that PCTs were safe for human use.

107.  Defendants' warranties constitute affirmations of fact, promises and descriptions regarding the quality and safety of their products and services.

108.  Defendants breached these warranties in that they failed to prevent radiation from PCTs from entering the user's body, which could have been easily accomplished  by incorporating methods, materials and equipment which were available for such purpose.

109.  Plaintiffs are informed and believe and thereon allege that such radiation constitutes a risk of harm to the health of users of PCTs.

110.  PCTs do not conform to express representations because they have not been found to be safe and have the potential for causing serious biological and health effects.

## TENTH CAUSE OF ACTION

### (Breach of Implied Warranty)

111.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 110 of this First Amended Class Action Complaint.

112.  At the time defendants marketed, sold, distributed and/or promoted PCTs to plaintiffs and the class, defendants knew of the use for which PCTs were intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

113.  Plaintiffs and members of the class relied upon the skill and judgment of defendants in determining that the PCTs were of merchantable quality and safe and fit for their intended use.

114.  Defendants breached said warranties because such PCTs are not fit for their intended purpose and are unreasonably dangerous.

## ELEVENTH CAUSE OF ACTION

### (Conspiracy)

Brower v. Motorola
First Amended Complaint                    41

Exhibit C
Page 55

115.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 114 of this First Amended Class Action Complaint.

116.  At all times relevant, the defendants formed confederacies and entered into agreements and/or tacit understandings to individually, jointly, and in conspiracy with each other, to first block any safety standard and then later, to conceal and prevent consideration of relevant information, until a safety standard was finally adopted which PCTs could pass.  The defendants accomplished this objective in part by using an atypical model of a human head, that has little, if any, relevance to the physical structure of the heads of the intended users of PCTs, and by using propagation, electrical and magnetic characteristics of the far field of PCT radiation without regard to the fact that the very different near field is the portion of the PCT transmission that enters the brain of the user, and without considering the effect of stored energy surrounding the PCT antenna or the difference in analog and digital transmissions, or considering other relevant scientific information.

117.  Having constructed and adopted an inadequate standard, defendant then formed confederacies and entered into agreements and/or tacit understandings to individually, jointly, and in conspiracy with each other to develop a test method that is so susceptible to error and manipulation that would virtually ensure that defendants' PCTs could meet the standard.

118.  Defendants also formed confederacies and entered into agreements and/or tacit understandings to individually, jointly, and in conspiracy with each other to suppress knowledge of health hazards from RF fields and to attack and discredit any scientific researchers who made such findings thereby controlling and manipulating the "science" concerning this issue.

119.  Defendants formed confederacies and entered into agreements and/or tacit understandings to individually, jointly, and in conspiracy with each other to prevent the use or deployment of any shields, protective materials or electronic methods to block radiation from entering the users body.  Plaintiffs are informed and believe and thereon allege that, in taking this action, the defendants were motivated by considerations of cost, fear of government regulation or that such safety measures would be construed as an acknowledgment that there is a risk from RF radiation.

120.  Defendants formed confederacies and entered into agreements and/or tacit understandings

Exhibit C
Page 56

1    to individually, jointly, and in conspiracy with each other lobbied, pressured, deceived and

2    mislead various governmental agencies (including hiring away government employees) to prevent

3    inquiry into the risk of harm to the health of the user from PCT radiation.

4    121. Defendants formed confederacies and entered into agreements and/or tacit understandings

5    to individually, jointly, and in conspiracy with each other, to manipulate, intimidate and control

6    the media with respect to reporting studies which establish adverse biological effects and

7    epidemiology studies indicate an increase risk of brain cancer from using PCTs.

8    122. At all times relevant, defendants collectively spent millions of dollars per year to finance

9    selective research designed to confuse and cast doubt on the growing evidence that radiation

10   from PCTs can harm the health of user.

11   123. Defendants' conduct exhibits such an entire want of care as to establish that their actions

12   were a result of fraud, evil motive, actual malice, and the conscious and deliberate disregard of

13   foreseeable harm as to form the basis for an award of punitive damages.

14                          **TWELFTH CAUSE OF ACTION**

15                                    (Fraud)

16   124. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through

17   123 of this First Amended Class Action Complaint.

18   125. At all times herein, defendants and each of them, in setting standards and testing methods

19   for PCTs, in their advertising, public statement, instruction manuals, instruction manuals and

20   their promotional literature, continuously made false representation to lead the public and the

21   plaintiff and the class to believe that:

22      a. The public can rely on such standards and testing methods to safeguard PCT users from any

23   risk of harm;

24      b. Governments and scientists have found that PCTs are absolutely safe and pose no risk of

25   harm to the user;

26      c. There is no way that PCTs can constitute any risk of harm whatsoever to users.

27   126. At all times herein, defendants and each of them, in setting standards and testing methods

28   for PCTs, in their advertising, public statement, instruction manuals, instruction manuals and

Brower v. Motorola
First Amended Complaint                        43

Exhibit C
Page 57

1    their promotional literature, concealed and failed to disclose that:

2        a. Radiation from PCTs enters the body of the user;

3        b. The effect of this radiation is to heat the water in the users cells and that heat can damages

4    cells and cause other harm;

5        c. That the near field radiation had not been studied or quantified and that it is the near field

6    that penetrates the brain of the user;

7        d. That the stored energy around the PCT antenna is thousands of times more powerful than

8    the energy in the far field, which the defendants use at a measure of power density of the signal

9    entering the brain;

10       e. That the non-ionizing radiation from the PCT has been identified in a substantial body of

11   scientific and epidemiological studies as a significant risk of harm to the health of the user; and

12       f. Methods exist to prevent a user from being radiated but the defendants have decided not to

13   incorporate such safety measures in PCTs.

14   127.  Plaintiffs are informed and believe and thereon allege that when a PCT fails a SAR test, it is

15   tested again and again, until a "pass" score is recorded and only the pass score is reported and

16   the failure results are not revealed.

17   128.  Plaintiffs and the class justifiably relied on the false representations made by the defendants,

18   were defrauded by defendants' concealment and failure to conduct proper research, testing,

19   development and implementation of safety features and as a result suffered damages

20   129.  At all times relevant, notwithstanding their knowledge of the inadequacy and

21   ineffectiveness of the standard and the testing procedures, and the growing body of evidence that

22   indicates that there is a serious risk of harm to users from PCT radiation, the defendants

23   continued, and continue to this very day, to put dangerous PCTs into the stream of commerce

24   without informing the public or warning of the potential danger to health from the use of PCTs.

25   Indeed, defendants have pointed their advertising towards teenagers and children, knowing that

26   the risk of harm to them is the highest.

27   130.  At all times relevant hereto, the defendants actually knew of the facts alleged herein above

28   and continued to design, manufacture, market and sell PCTs so as to maximize sales and profits

Exhibit C
Page 58

1  at the expense of public health and safety. Defendants' conduct exhibits such an entire want of
2  care as to establish that their actions were a result of fraud, evil motive, actual malice, and the
3  conscious and deliberate disregard of the foreseeable harm to plaintiffs and the class. The
4  plaintiffs and the class are therefore entitled to punitive damages.

5                              **THIRTEENTH CAUSE OF ACTION**

6                                       (Civil Battery)

7  131.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through
8  130 of this First Amended Class Action Complaint.

9  132.  Neither the plaintiffs or the class were aware of or consented to the penetration of RF
10  radiation into their bodies or brains.

11  133.  The defendants, through their conduct and omissions, acting by and through their
12  respective agents, servants, and/or employees, inflicted harmful or offensive contact to plaintiff
13  and the class by exposing them to radiation fields which they knew could cause biological
14  changes and had the potential to cause permanent and significant health risks and effects.

15  134.  Defendants intended to and did inflict this specific harm upon plaintiff, Gibb Brower, and
16  an unknown number of the class.

17                              **FOURTEENTH CAUSE OF ACTION**

18                                     (Punitive Damages)

19  135.  Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through
20  134 of this First Amended Class Action Complaint.

21  136.  All of the defendants' conduct was willful, wanton and defendants acted with reckless and
22  conscious disregard for the consequences of their actions.

23  137.  As a result, each and all of the defendants herein are liable for punitive and exemplary
24  damages in such amounts as a jury deems just and proper under the circumstances.

25                                 **PRAYER FOR RELIEF**

26      WHEREFORE, plaintiffs and the class pray judgment against defendants, and each of them, as
27  follows:

28      1. Plaintiffs seek damages on behalf of plaintiffs' class  in an amount sufficient to conduct

Brower v. Motorola
First Amended Complaint                          45

Exhibit C
Page 59

independent studies to: (a) determine the characteristics and power density of the near field and ELF radiation from PCTs; (b) determine the characteristics and power density of the storage energy field around the antennas of PCTs; (c) determine the difference in characteristics and power density from the different antennas commonly in use on PCTs manufactured and sold by defendants; (d) develop accurate SAR formulas based on the physical characteristics of average head size, shape and characteristics of: adult males, adult females, teenagers and children, taking into account "hot spot" formation; and, (e) to conduct scientific studies as may be necessary to determine the risk to health to members of plaintiffs' class by reason of the effects on the human body of all forms of electrical and magnetic exposure from PCTs, including, but not limited to analog, digital and ELF signals.

2.  Plaintiffs seek damages in an amount necessary to monitor and test plaintiff Gibb Brower and members of plaintiffs' class for any adverse health effects arising out of their use of PCTs.

3.  Plaintiffs seek relief under Business & Professions Code section 17200 and Civil Code section 1750, et. seq., including, but not limited to, an injunction requiring the defendants to fully inform members of plaintiffs' class of any and all scientific and epidemiological studies which indicate a potential risk of harm to their health from PCT radiation, excluding any PCTs which have been equipped with shielding devices that prevent RF and ELF radiation from entering the user's body., and warn such members that the standards and methods used to test their PCTs are unreliable.

4.  Plaintiffs seek punitive damages in an amount sufficient to deter the defendants' malicious and irresponsible corporate policies which have made uninformed guinea pigs of the plaintiffs and the plaintiffs' class to be awarded to plaintiffs and to each class member.

5.  Plaintiffs seek restitution of the money paid by them and by the class for the amounts paid for cellular service and for PCTs.

6.  Plaintiffs ask for a permanent injunction enjoining defendants, their partners, joint venturers, agents, servants, employees, and all persons acting under, in concert with, or from them directly or indirectly, or in any manner, in any way engaging in deceptive practices by continuing to advertise to consumers in California that any PCT, which has not been equipped

Brower v. Motorola
First Amended Complaint                                   46

Exhibit C
Page 60

1   with shielding devices that prevent RF and ELF radiation from entering the users body, is safe.

2      7.  Plaintiffs ask for a permanent injunction enjoining defendants, their partners, joint

3   venturers, agents, servants, employees, and all persons acting under, in concert with, or from

4   them directly or indirectly, or in any manner, in any way engaging in deceptive practices by

5   continuing to advertise the public that the SAR standard and/or test methods have any validity.

6      8.  Plaintiffs ask for a permanent injunction enjoining defendants, their partners, joint

7   venturers, agents, servants, employees, and all persons acting under, in concert with, or from

8   them directly or indirectly, or in any manner, in any way engaging in deceptive practices by

9   continuing to state that governments and scientists, as a group, have found that PCTs are safe for

10   human use.

11      9.  Plaintiffs ask for judgment against defendants, jointly and severally, for special and general

12   damages for injury and illness sustained by plaintiffs and by members of the class by reason of RF

13   radiation from PCTs in an amount to be determined at trial.

14      10.  Plaintiffs ask for compensatory damages and/or full restitution of all funds acquired from

15   defendants' unfair business practices.

16      11.  Plaintiffs ask for imposition of a constructive trust upon all monies and assets defendants

17   have acquired as a result of their unfair, unlawful and/or fraudulent and misleading practices;

18      12.  Plaintiffs ask for punitive and exemplary damages to be awarded to plaintiffs and each

19   class member.

20      13.  Plaintiffs ask for both pre- and post-judgment interest on any amounts awarded.

21      14.  Plaintiffs ask for an award of reasonable attorney's fees.

22      15.  Plaintiffs ask that they recover costs of this action; and

23      16.  That this Court afford such other relief that it deems just and proper under the

24   circumstances.

25   /// 

26   /// 

27   /// 

28   /// 

Brower v. Motorola
First Amended Complaint             47

**Exhibit C**
**Page 61**

1

## DEMAND FOR JURY TRIAL

2       Plaintiffs hereby demand a trial by jury.

3    DATED: December 5, 2001

4

5                                        Carl Hilliard
                                         1246 Stratford Court
6                                        Del Mar, California 92104
                                         Telephone: (858) 509-2938
7                                        Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brower v. Motorola
First Amended Complaint                          48

**Exhibit C**
**Page 62**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
330 W. Broadway, Dept. 68
San Diego, CA 92101
619-685-6026

TO:

CARL B. HILLIARD          #34270
1246 STRATFORD
DEL MAR, CA 92014

| GIBB BROWER, et al. | | Case No.: GIC765987 |
|---|---|---|
| | Plaintiff(s) | |
| | vs. | **NOTICE OF** |
| | | **CASE MANAGEMENT CONFERENCE** |
| MOTOROLA INC | Defendant(s) | Sanctions pursuant to C.C.P. 575.2 and 177.5 may be imposed for failure to serve this notice. |

**COUNSEL: CHECK SERVICE LIST. IF YOU HAVE BROUGHT A PARTY INTO THIS CASE WHO IS NOT INCLUDED IN THE SERVICE LIST, Superior Court Rules, Division 11, Rule 5.10 REQUIRES YOU TO SERVE THEM WITH A COPY OF THIS NOTICE.**

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above. All inquiries regarding this notice should be referred to the court and phone number listed above.

| TYPE OF HEARING | DATE | TIME | REPORT TO JUDGE |
|---|---|---|---|
| Case Management Conference | 11/30/01 | 10:00AM | SHERIDAN REED |

A Case Management Conference Questionnaire must be completed by counsel for all parties and timely filed with the court at least five days prior to the initial Case Management Conference (Rule 5.10).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing.

**CERTIFICATE OF SERVICE**

I, STEPHEN THUNBERG, certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego , California.

Dated: 10/30/01                    STEPHEN THUNBERG          Clerk of the Superior Court
                              by LINDA CRAIG, Deputy Clerk

CARL B. HILLIARD (P)

SUPCT CIV 712(Rev. 2-00)          CMC-CASE MANAGEMENT CONFERENCE          **Exhibit C**
                                                                        **Page 63**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:
Tony L. Richardson (SBN 126230)
Kirkland & Ellis
777 So. Figueroa St., Ste. 3400, L.A. CA 90017
TELEPHONE NO.: 213/680-8442 FAX NO.: 213/680-8500
ATTORNEY FOR *(Name)*: Motorola, Inc.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☐ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
☒ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296
☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792

**FOR COURT USE ONLY**

F I L E D
STEPHEN THUNBERG
Clerk of the Superior Court

NOV 6 2001

By: P. WOODS, Deputy

PLAINTIFF(S)
Gibb Brower and Kim Brower

DEFENDANT(S)
Motorola, Inc., et al.

JUDGE: Sheridan Reed

IN THE MATTER OF
Brower v. Motorola, Inc., et al.

DEPT: 68

**PEREMPTORY CHALLENGE**
(CCP 170.6; Superior Court Rules, Division II, Rule 5.5)

CASE NUMBER
GIC 765987

Tony L. Richardson _____, is ☐ a party ☒ an attorney for a party in the above-entitled case and declares that Judge Sheridan Reed _____, the Judge to whom this case is assigned, is prejudiced against the party or the party's attorney or the interests of the party or the party's attorney such that the said party or parties believe(s) that a fair and impartial trial or hearing cannot be had before such Judge.

WHEREFORE, pursuant to the provisions of §170.6 of the California Code of Civil Procedure, I respectfully request that this Court issue its order reassigning said case to another, and different, Judge for further proceedings.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: November 1, 2001 _____

_____
(Signature)

**ORDER OF THE COURT**

☑ GRANTED   ☐ DENIED

This case is referred to Presiding/Supervising Department for reassignment and a Notice will be mailed to counsel.

Dated: 11/6/01

_____
Judge of the Superior Court

**FOR OFFICE USE ONLY**

This case has been reassigned to Judge Charles R. Hayes per Presiding/Supervising Judge
Wayne L. Peterson on Nov. 8, 2001.

SDSC CIV-249(Rev. 5-00)   **PEREMPTORY CHALLENGE**

**Exhibit C**
**Page 64**

**BROWER V. MOTOROLA, INC., et. al.**
Case No. GIC 765987

NOV   6 2001

By: P. WOODS, Deputy

**PROOF OF SERVICE BY MAIL**

I, the undersigned, declare: I am over the age of eighteen years and not a party to the cause; I am employed in, or am a resident of, the County of San Diego, California, where the mailing occurs; and my business address is: 701 B Street, Suite 1550, San Diego, California 92101.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

I caused to be served the following document(s):

**PEREMPTORY CHALLENGE**

by placing a copy of each document in a separate envelope addressed to each addressee, respectively, as follows:

Carl Hilliard, Esq.
LAW OFFICES OF CARL B. HILLIARD
1246 Stratford
Del Mar, CA   92014

Richard B. Goetz, Esq.
Olivia D. A. Fields, Esq.
O'MELVENY AND MYERS
400 South Hope Street, Suite 1050
Los Angeles, California 90071-2899

William McCurine, Jr., Esq.
SOLOMON   WARD   SEIDENWURM   &
SMITH
401 B Street, Suite 1200
San Diego, California 92101

Scott A. Elder
William T. Plybon
Jane P. Thorpe
 ALSTON & BIRD, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309

Marchell M. Willian, Esq.
Terrence J. Dee, Esq.
Jane S. Park, Esq.
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601

Jeffrey S. Davidson, Esq.
Tony L. Richardson, Esq.
Amanda Wong, Esq.
KIRKLAND & ELLIS
777 South Figueroa Street
Los Angeles, California   90017

Francis A. Citera, Esq.
GREENBERG TRAURIG, P.C.
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601

**Exhibit C** Case No.: GIC 765987
**Page 65**

1      I then sealed each envelope and, with the postage thereon fully prepaid, I placed each for

2  deposit in the United States Postal Service, this same day, at my business address shown above,

3  following ordinary business practices.

4      I declare under penalty of perjury under the laws of the State of California that the foregoing

5  is true and correct.

6      Executed at San Diego, California, on November 2, 2001.

7

8                  _____

                       Tyla L. Jernigan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit C**
**Page 66**

Case No.: GIC 765987

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Tony L. Richardson (SBN 126230)<br>Kirkland & Ellis<br>777 So. Figueroa St., Ste. 3400, L.A. CA 90017<br>TELEPHONE NO: 213/680-8442 FAX NO: 213/680-8500<br>ATTORNEY FOR (Name): Motorola, Inc. | F I L E D<br>STEPHEN THUNBERG<br>Clerk of the Superior Court<br>NOV 6 2001<br>By: P. WOODS, Deputy |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| ☐ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814<br>☒ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827<br>☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296<br>☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941<br>☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649<br>☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792 | |

| PLAINTIFF(S)<br>Gibb Brower and Kim Brower | |
|---|---|
| DEFENDANT(S)<br>Motorola, Inc., et al. | JUDGE: Sheridan Reed |
| IN THE MATTER OF<br>Brower v. Motorola, Inc., et al. | DEPT: 68 |
| **PEREMPTORY CHALLENGE**<br>(CCP 170.6; Superior Court Rules, Division II, Rule 5.5) | CASE NUMBER<br>GIC 765987 |

Tony L. Richardson _____, is ☐ a party ☒ an attorney for a party in the above-entitled case and declares that __Judge Sheridan Reed__ , the Judge to whom this case is assigned, is prejudiced against the party or the party's attorney or the interests of the party or the party's attorney such that the said party or parties believe(s) that a fair and impartial trial or hearing cannot be had before such Judge.

WHEREFORE, pursuant to the provisions of §170.6 of the California Code of Civil Procedure, I respectfully request that this Court issue its order reassigning said case to another, and different, Judge for further proceedings.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: November 1, 2001                    _____
                                            (Signature)

---

**ORDER OF THE COURT**

☒ GRANTED   ☐ DENIED

This case is referred to Presiding/Supervising Department for reassignment and a Notice will be mailed to counsel.

Dated: NOV 06 2001 _____      SHERIDAN E. REED _____
                                          Judge of the Superior Court

---

**FOR OFFICE USE ONLY**

This case has been reassigned to Judge _____ per Presiding/Supervising Judge
_____ on _____.

SDSC CIV-249(Rev. 5-00)          **PEREMPTORY CHALLENGE**

Exhibit C
Page 67

### BROWER V. MOTOROLA, INC., et. al.
#### Case No. GIC 765987

#### PROOF OF SERVICE BY MAIL

I, the undersigned, declare: I am over the age of eighteen years and not a party to the cause; I am employed in, or am a resident of, the County of San Diego, California, where the mailing occurs; and my business address is: 701 B Street, Suite 1550, San Diego, California 92101.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

I caused to be served the following document(s):

**PEREMPTORY CHALLENGE**

by placing a copy of each document in a separate envelope addressed to each addressee, respectively, as follows:

Carl Hilliard, Esq.
LAW OFFICES OF CARL B. HILLIARD
1246 Stratford
Del Mar, CA  92014

Richard B. Goetz, Esq.
Olivia D. A. Fields, Esq.
O'MELVENY AND MYERS
400 South Hope Street, Suite 1050
Los Angeles, California 90071-2899

William McCurine, Jr., Esq.
SOLOMON WARD SEIDENWURM &
SMITH
401 B Street, Suite 1200
San Diego, California 92101

Scott A. Elder
William T. Plybon
Jane P. Thorpe
 ALSTON & BIRD, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309

Marchell M. Willian, Esq.
Terrence J. Dee, Esq.
Jane S. Park, Esq.
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601

Jeffrey S. Davidson, Esq.
Tony L. Richardson, Esq.
Amanda Wong, Esq.
KIRKLAND & ELLIS
777 South Figueroa Street
Los Angeles, California   90017

Francis A. Citera, Esq.
GREENBERG TRAURIG, P.C.
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601

Exhibit C
Page 68   Case No.: GIC 765987

1    I then sealed each envelope and, with the postage thereon fully prepaid, I placed each for

2    deposit in the United States Postal Service, this same day, at my business address shown above,

3    following ordinary business practices.

4    I declare under penalty of perjury under the laws of the State of California that the foregoing

5    is true and correct.

6    Executed at San Diego, California, on November 2, 2001.

7

8    _____

9    Tyla L. Jernigan

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3                   Exhibit C        Case No.: GIC 765987
                    Page 69

1   ALSTON & BIRD LLP
      Jane F. Thorpe (pro hac vice)
2      William T. Plybon (pro hac vice)
      A. Annette Teichert (pro hac vice)
3      Michael B. Arnold (pro hac vice)
    One Atlantic Center
4   1201 West Peachtree Street
    Atlanta, Georgia 30309-3424
5   (404) 881-7000
    (404) 881-7777 (facsimile)
6
    Attorneys for Defendant GTE Mobilnet
7   of San Diego Incorporated

8   WRIGHT & L'ESTRANGE
      Robert C. Wright (051864)
9   701 B Street, Suite 1550
    San Diego, California 92101
10  (619) 231-4844
    (619) 231-6710 (facsimile)
11
    Attorneys for Defendant Motorola, Inc.
12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                       COUNTY OF SAN DIEGO

15  Gibb Brower and Kim Brower,          )   Case No.: GIC 765987
                                         )
16              Plaintiffs,              )
                                         )   **PROOF OF SERVICE BY MAIL**
17        vs.                            )
                                         )
18  Motorola, Inc., a Delaware corporation; U.S. )
    West Wireless, LLC, a Colorado corporation;)
19  U.S. West Communications, Inc., a Colorado )
    corporation; Verizon Communications, Inc., )
20  a New York corporation; GTE Mobilnet of )
    San Diego Incorporated, a Delaware       )
21  corporation; GTE Wireless San Diego LLC, )
    a California Limited Liability corporation; )
22  Sony Electronics Inc., a Delaware        )
    corporation; Cellular Telecommunications )
23  and Internet Association, a District of  )
    Columbia  corporation; Cellular Carriers )
24  Association of California, a California   )
    corporation; GTE Corporation, a Delaware )
25  corporation; Verizon Wireless, a joint   )
    venture and DOES 4 through 100, inclusive, )
26                                       )
                Defendants.              )
27  _____ )

28

                                        **Exhibit C**
                                        **Page 70**

## BROWER V. MOTOROLA, INC., et. al.
### Case No. GIC 765987

## PROOF OF SERVICE BY MAIL

I, the undersigned, declare: I am over the age of eighteen years and not a party to the cause;

I am employed in, or am a resident of, the County of San Diego, California, where the mailing

occurs; and my business address is: 701 B Street, Suite 1550, San Diego, California 92101.

I further declare that I am readily familiar with the business' practice for collection and

processing of correspondence for mailing with the United States Postal Service; and that the

correspondence shall be deposited with the United States Postal Service this same day in the

ordinary course of business.

I caused to be served the following document(s):

**PEREMPTORY CHALLENGE (signed by Judge Reed on November 6, 2001)**

by placing a copy of each document in a separate envelope addressed to each addressee, respectively,

as follows:

Carl Hilliard, Esq.
LAW OFFICES OF CARL B. HILLIARD
1246 Stratford
Del Mar, CA  92014

Richard B. Goetz, Esq.
Olivia D. A. Fields, Esq.
O'MELVENY AND MYERS
400 South Hope Street, Suite 1050
Los Angeles, California 90071-2899

William McCurine, Jr., Esq.
SOLOMON WARD SEIDENWURM &
SMITH
401 B Street, Suite 1200
San Diego, California 92101

Scott A. Elder
William T. Plybon
Jane P. Thorpe
 ALSTON & BIRD, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309

Marchell M. Willian, Esq.
Terrence J. Dee, Esq.
Jane S. Park, Esq.
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601

Jeffrey S. Davidson, Esq.
Tony L. Richardson, Esq.
Amanda Wong, Esq.
KIRKLAND & ELLIS
777 South Figueroa Street
Los Angeles, California  90017

Francis A. Citera, Esq.
GREENBERG TRAURIG, P.C.
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601

1    I then sealed each envelope and, with the postage thereon fully prepaid, I placed each for

2  deposit in the United States Postal Service, this same day, at my business address shown above,

3  following ordinary business practices.

4    I declare under penalty of perjury under the laws of the State of California that the foregoing

5  is true and correct.

6    Executed at San Diego, California, on November 9, 2001.

7

8

9                                     Tyla L. Jernigan

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3                    **Exhibit C**   Case No.: GIC 765987
                     **Page 72**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
330 W. Broadway, Dept. 66
San Diego, CA 92101
619-685-6017

**TO:**

**FILE COPY:** PAGE 1 OF 1

1   NOTICE PREPARED

| | |
|---|---|
| GIBB BROWER, et al. | **Case No.:** GIC765987 |
| **Plaintiff(s)** | |
| vs. | **NOTICE OF CASE REASSIGNMENT** |
| MOTOROLA INC | **DUE TO CHALLENGE, RECUSAL OR SPECIAL ASSIGNMENT** |
| **Defendant(s)** | |

**COMPLAINT FILED** 04/19/01

**EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED TO THE INDEPENDENT CALENDAR PROGRAM WITH JUDGE**
CHARLES R. HAYES, DEPARTMENT 66, 619-685-6017.

ALL SUBSEQUENT DOCUMENTS FILED IN THIS CASE MUST INCLUDE THE NAME OF THE NEW JUDGE AND THE DEPARTMENT NUMBER ON THE FIRST PAGE IMMEDIATELY BELOW THE NUMBER OF THE CASE. ALL COUNSEL AND PARTIES IN PRO PER ARE ADVISED THAT DIVISION II OF THE SUPERIOR COURT RULES IS STRICTLY ENFORCED. IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

UNLESS NOTIFIED OTHERWISE. ALL PENDING DATES ARE VACATED. PLEASE RESCHEDULE ANY CURRENTLY PENDING MOTIONS OR EX PARTE HEARINGS IN THE NEW DEPARTMENT.

**CERTIFICATE OF SERVICE**

I, STEPHEN THUNBERG, certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego, California.

Dated: 11/09/01

STEPHEN THUNBERG _____ Clerk of the Superior Court
by LINDA CRAIG, Deputy Clerk

CARL B. HILLIARD
1246 STRATFORD
DEL MAR, CA 92014

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

330 W. Broadway, Dept. 66
San Diego, CA 92101
619-685-6017

TO:

CARL B. HILLIARD       #34270
1246 STRATFORD
DEL MAR, CA 92014

| | |
|---|---|
| GIBB BROWER, et al. <br><br> Plaintiff(s) <br><br> vs. <br><br> MOTOROLA INC <br><br> Defendant(s) | **Case No.:** GIC765987 <br><br> # NOTICE OF CASE MANAGEMENT CONFERENCE <br><br> Sanctions pursuant to C.C.P. 575.2 and 177.5 may be imposed for failure to serve this notice. |

**COUNSEL: CHECK SERVICE LIST. IF YOU HAVE BROUGHT A PARTY INTO THIS CASE WHO IS NOT INCLUDED IN THE SERVICE LIST, Superior Court Rules, Division II, Rule 5.10 REQUIRES YOU TO SERVE THEM WITH A COPY OF THIS NOTICE.**

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above. All inquiries regarding this notice should be referred to the court and phone number listed above.

| TYPE OF HEARING | DATE | TIME | REPORT TO JUDGE |
|---|---|---|---|
| Case Management Conference | 01/18/02 | 10:15AM | CHARLES R. HAYES |

A Case Management Conference Questionnaire must be completed by counsel for all parties and timely filed with the court at least five days prior to the initial Case Management Conference (Rule 5.10).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing.

### CERTIFICATE OF SERVICE

I, STEPHEN THUNBERG, certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego , California.

Dated: 11/20/01 _____       STEPHEN THUNBERG _____ Clerk of the Superior Court

by LINDA CRAIG, Deputy Clerk

CARL B. HILLIARD (P)

1   Carl Hilliard (State Bar No. 034270)
    1246 Stratford
2   Del Mar, California 92014
    Telephone: (858) 509-2938
3   Attorney for Plaintiffs

4

5

6

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9                       **COUNTY OF SAN DIEGO**

10  Gibb Brower and Kim Brower,

11                  Plaintiffs,            Case No.: GIC765987

12  vs.

13  Motorola, Inc., a Delaware
    corporation; U.S. West Wireless, LLC,   **CERTIFICATE OF SERVICE BY MAIL**
14  a Colorado corporation; U. S. West
    Communications, Inc., a Colorado
15  corporation; Verizon Communications,
    Inc., a New York corporation; GTE
16  Mobilnet of San Diego Incorporated,
    a Delaware corporation; GTE Wireless
17  San Diego LLC, a California Limited
    Liability corporation; Sony Electronics
18  Inc., a Delaware corporation; Cellular
    Telecommunications and Internet
19  Association, a District of Columbia
    corporation, Cellular Carriers
20  Association of California, a California
    corporation; and DOES 1 through
21  100, inclusive,

22                  Defendants.

23          I, the undersigned, declare: I am over the age of eighteen years and not a party to the

24  cause;   I am employed in and a resident of the County of San Diego, California, where the

25  mailing occurs; and my business address is 1246 Stratford, Del Mar, California, 92014.

26          I further declare that I am readily familiar with the business' practice for collection and

27  processing of correspondence for mailing with the United States Postal Service; and that the

28  correspondence shall be deposited with the United States Postal Service this sme day in the

                                                        **Exhibit C**
                                                        **Page 75**

1  ordinary course of business.  I caused to be served the following document(s):

2  **NOTICE OF CASE MANAGEMENT CONFERENCE**

3  by placing a copy of each document in a separate envelope addressed to each addressee,

4  respectively, as follows:

5  Robert C. Wright, Esq.                    Alston & Bird LLP
   Wright & L'Estrange                       One Atlantic Center
6  701 B Street, Suite 1550                  1201 West Peachtree Street
   San Diego, California 92101               Atlanta, Georgia 30309
7
   William McCurine, Jr., Esq.              Richard B. Goetz, Esq.
8  Solomon Ward Seidenwurm & Smith          O'Melveny and Myers
   401 B Street, Suite 1200                 400 South Hope Street, Suite 1050
9  San Diego, California 92101              Los Angeles, California 90071

10 Marchell M. Willan, Esq.                 Jeffrey S. Davidson, Esq.
   Kirkland & Ellis                         Kirkland & Ellis
11 200 East Randolph Drive                  777 South Figueroa Street
   Chicago, Illinois 60601                  Los Angeles, California 90017
12
   Meryl C. Maneker, Esq.
13 Wilson Petty Kosmo & Turner
   550 West C Street, Suite 1050
14 San Diego, California 92101

15      I sealed each envelope and, with the postage thereon fully prepaid, I placed each for

16 deposit in the United States Postal Service, this same day, at my business address shown above.

17      I declare under penalty of perjury under the laws of the State of California that the

18 foregoing is true and correct.

19      Executed at San Diego, California, on December 3, 2001.

20      _Ed de Jesus_
        Ed deJesus

21

22

23

24

25

26

27

28                          -2-

**Exhibit C
Page 76**

F I L E D
STEPHEN THUNBERG
Clerk of the Superior Court

DEC 1 2 2001

By: B. TOM, Deputy

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

GIBB BROWER and KIM BROWER,           ) Case No.: GIC 765987
                                       )
              Plaintiffs,              )
                                       )
      vs.                              ) ORDER
                                       )
MOTOROLA, INC., a Delaware             )
Corporation, et al.,                   )
                                       )
              Defendants.              )

The Court on its own Motion and in furtherance of justice hereby recuses itself pursuant to CCP §170.1(a)(6)(A).  The Court owns shares in AT&T Wireless which procured Defendant GTE's wireless services in San Diego.

This case is ordered transferred to the Presiding Department for reassignment.

IT IS SO ORDERED.

Date:  DEC 1 2 2001

_____
CHARLES R. HAYES,
Judge of the Superior Court

ORDER - 1

**Exhibit C**
**Page 77**

**Superior Court of California**
**County of San Diego**

| | | COURT USE ONLY |
|---|---|---|

| PLAINTIFF(S) | GIBB BROWER and KIM BROWER |
|---|---|

F I L E D
STEPHEN THUNBERG
Clerk of the Superior Court

**DEC 1 3 2001**

By: B. TOM, Deputy

| DEFENDANT(S) | MOTOROLA, INC., a Delaware Corporation, et al. |
|---|---|

| CLERK'S CERTIFICATE OF SERVICE BY MAIL(CCP 1013a(4)) | CASE NUMBER:  GIC 765987 |
|---|---|

I, STEPHEN THUNBERG, Clerk of the Superior Court of the State of California, for the County of San Diego, do hereby certify that: I am not a party to the cause referred to herein; that on the date shown below, I placed a true copy of the:

ORDER

in a separate envelope, addressed to each addressee shown below; each envelope was then sealed and, with postage thereon fully prepaid, was deposited in the United States Postal Service at:

☒  San Diego ☐  Vista ☐  El Cajon ☐  Chula Vista, California.

CARL HILLIARD ESQ
LAW OFFICES OF CARL HILLIARD
1246 STRATFORD
DEL MAR  CA  92014

RICHARD B GOETZ ESQ
OLIVIA FIELDS ESQ
O'MELVENY AND MYERS
400 SOUTH HOPE ST  STE 1050
LOS ANGELES  CA  90071-2899

WILLIAM McCURINE JR ESQ
SOLOMON WARD ET AL
401 B STREET  STE 1200
SAN DIEGO CA 92101

SCOTT A ELDER
WILLIAM T PLYBON
JANE P THORPE
ALSTON & BIRD LLP
ONE ATLANTIC CENTER
1201 WEST PEACHTREE STREET
ATLANTA  GA  30309

MARCHELL M WILLIAN ESQ
TERRENCE DEE ESQ
JANE PARK ESQ
KIRKLAND & ELLIS
200 EAST RANDOLPH DRIVE
CHICAGO  IL  60601

JEFFREY DAVIDSON ESQ
TONY RICHARDSON ESQ
AMANDA WONG ESQ
KIRKLAND & ELLIS
777 SOUTH FIGUEROA STREET
LOS ANGELES  CA 90017

FRANCIS CITERA ESQ
GREENBERG TRAURIG PC
77 WEST WACKER DRIVE  STE 2500
CHICAGO  IL  60601

**STEPHEN THUNBERG**
Clerk of the Superior Court

**Exhibit C**
**Page 78**

Date: ___DEC 1 3 2001___        By: ___S. Tom_____, Deputy

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
330 W. Broadway, Dept. 66
San Diego, CA 92101
619-685-6017

**TO:**

**FILE COPY:** PAGE 1 OF 1

1   NOTICE PREPARED

| | |
|---|---|
| GIBB BROWER, et al.<br><br>Plaintiff(s)<br><br>vs.<br><br>MOTOROLA INC<br><br>Defendant(s) | Case No.:  GIC765987<br><br>## NOTICE OF FAILURE<br>## TO COMPLY<br><br>Sanctions pursuant to C.C.P. 575.2 and 177.5 will be<br>before the Court. |

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above.
All inquiries regarding this notice should be referred to the court and phone number listed above.

| TYPE OF HEARING | DATE | TIME | REPORT TO JUDGE |
|---|---|---|---|
| Failure to File Certificate of<br>    Service | 01/18/02 | 10:15AM | CHARLES R. HAYES |

**HEARING CANCELLED**

The hearing will be cancelled if BOTH of the following occur prior to _____

1) File the above document.
2) Stipulate to and pay a sanction in the amount of $50, payable to "San Diego Superior Court", **WITH A COPY OF THIS NOTICE**, in the Accounting Division of the Superior Court.

If you are unable to comply with the above, appearance at the hearing is mandatory.

___CARL B. HILLIARD, Esq._____ is the counsel being sanctioned.

CERTIFICATE OF SERVICE

I, STEPHEN THUNBERG, certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego, California.

Dated: 12/19/01_____   STEPHEN THUNBERG_____ Clerk of the Superior Court
by LINDA CRAIG, Deputy Clerk

CARL B. HILLIARD
1246 STRATFORD
DEL MAR, CA 92014

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
330 W. Broadway, Dept. 66
San Diego, CA 92101
619-685-6017

TO:

**FILE COPY:** PAGE 1 OF 1

1   NOTICE PREPARED

| | |
|---|---|
| GIBB BROWER, et al.<br><br>Plaintiff(s)<br><br>vs.<br><br>MOTOROLA INC<br><br>Defendant(s) | **Case No.:** GIC765987<br><br>## NOTICE OF FAILURE TO COMPLY<br><br>Sanctions pursuant to C.C.P. 575.2 and 177.5 will be before the Court. |

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above. All inquiries regarding this notice should be referred to the court and phone number listed above.

| TYPE OF HEARING | DATE | TIME | REPORT TO JUDGE |
|---|---|---|---|
| Failure to File Certificate of Service | 01/18/02 | 10:15AM | CHARLES R. HAYES |

**HEARING CANCELLED**

The hearing will be cancelled if BOTH of the following occur prior to _____

1) File the above document.
2) Stipulate to and pay a sanction in the amount of $50, payable to "San Diego Superior Court", **WITH A COPY OF THIS NOTICE,** in the Accounting Division of the Superior Court.

If you are unable to comply with the above, appearance at the hearing is mandatory.

_____CARL B. HILLIARD, Esq._____    is the counsel being sanctioned.

### CERTIFICATE OF SERVICE

I, STEPHEN THUNBERG, certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego , California.

Dated: _12/19/01_____    STEPHEN THUNBERG_____ Clerk of the Superior Court

by LINDA CRAIG, Deputy Clerk

CARL B. HILLIARD
1246 STRATFORD
DEL MAR, CA 92014

SUPCT CIV-710(Rev. 7-94)          FTC-NOTICE OF FAILURE TO COMPLY

**Exhibit C
Page 80**

PAGE 1 OF 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
330 W. Broadway, Dept. 72
San Diego, CA 92101
619-685-6027

TO:

**FILE COPY:** PAGE  1 OF 1

1   NOTICE PREPARED

---

| | |
|---|---|
| GIBB BROWER, et al. <br><br> Plaintiff(s) <br><br> vs. <br><br> MOTOROLA INC <br><br> Defendant(s) | Case No.:  GIC765987 <br><br> **NOTICE OF CASE REASSIGNMENT** <br> DUE TO CHALLENGE, RECUSAL <br> OR SPECIAL ASSIGNMENT |

**COMPLAINT FILED** _04/19/01_

EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED TO THE INDEPENDENT CALENDAR PROGRAM WITH JUDGE
J. RICHARD HADEN, DEPARTMENT 72, 619-685-6027.

ALL SUBSEQUENT DOCUMENTS FILED IN THIS CASE MUST INCLUDE THE NAME OF THE NEW JUDGE AND THE DEPARTMENT NUMBER ON THE FIRST PAGE IMMEDIATELY BELOW THE NUMBER OF THE CASE. ALL COUNSEL AND PARTIES IN PRO PER ARE ADVISED THAT DIVISION II OF THE SUPERIOR COURT RULES IS STRICTLY ENFORCED. IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

UNLESS NOTIFIED OTHERWISE, ALL PENDING DATES ARE VACATED. PLEASE RESCHEDULE ANY CURRENTLY PENDING MOTIONS OR EX PARTE HEARINGS IN THE NEW DEPARTMENT.

**CERTIFICATE OF SERVICE**

I, STEPHEN THUNBERG, certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego , California.

Dated: _12/19/01_

STEPHEN THUNBERG _____ Clerk of the Superior Court

by LINDA CRAIG, Deputy Clerk

CARL B. HILLIARD
1246 STRATFORD
DEL MAR, CA 92014

---

SUPCT CIV-723(Rev 2-00)   REA-NOTICE OF CASE REASSIGNMENT

**Exhibit C**
**Page 81**

PAGE 1 OF 1

1    Carl Hilliard (State Bar No. 034270)
     1246 Stratford
2    Del Mar, California 92014
     Telephone: (858) 509-2938
3    Attorney for Plaintiffs

4

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                        COUNTY OF SAN DIEGO

10   Gibb Brower and Kim Brower,

11                    Plaintiffs,              Case No.: GIC765987

12   vs.                                       **PROOF OF SERVICE BY MAIL**

13   Motorola, Inc., a Delaware
     corporation; U.S. West Wireless, LLC,
14   a Colorado corporation; U. S. West
     Communications, Inc., a Colorado         Assigned to: Judge J. Richard Haden
15   corporation; Verizon Communications,     Department 72
     Inc., a New York corporation; GTE
16   Mobilnet of San Diego Incorporated,
     a Delaware corporation; GTE Wireless
17   San Diego LLC, a California Limited
     Liability corporation; Sony Electronics
18   Inc., a Delaware corporation; Cellular
     Telecommunications and Internet
19   Association, a District of Columbia
     corporation, Cellular Carriers
20   Association of California, a California
     corporation; and DOES 1 through
21   100, inclusive,

22                    Defendants.

23

24        I, the undersigned, declare: I am over the age of eighteen years and not a party to the

25   cause; I am employed in and a resident of the County of San Diego, California, where the mailing

26   occurs; and my business address is 1246 Stratford, Del Mar, California, 92014.

27        I further declare that I am readily familiar with the business' practice for collection and

28   processing of correspondence for mailing with the United States Postal Service; and that the

**Exhibit C**
**Page 82**

1  correspondence shall be deposited with the United States Postal Service this same day in the

2  ordinary course of business.

3        I caused to be served the following document(s):

4  **NOTICE OF CASE REASSIGNMENT TO HON. J. RICHARD HAYDEN**

5  by placing a copy of each document in a separate envelope addressed to each addressee,

6  respectively, as follows:

7

8  Robert C. Wright, Esq.                 Alston & Bird LLP
   Wright & L'Estrange                 One Atlantic Center

9  701 B Street, Suite 1550             1201 West Peachtree Street
   San Diego, California 92101        Atlanta, Georgia 30309

10

11 William McCurine, Jr., Esq.        Richard B. Goetz, Esq.
   Solomon Ward Seidenwurm & Smith   O'Melveny and Myers

12 401 B Street, Suite 1200             400 South Hope Street, Suite 1050
   San Diego, California 92101        Los Angeles, California 90071

13 Marchell M. Willan, Esq.            Jeffrey S. Davidson, Esq.
   Kirkland & Ellis                    Kirkland & Ellis

14 200 East Randolph Drive           777 South Figueroa Street
   Chicago, Illinois 60601             Los Angeles, California 90017

15

16 Meryl C. Maneker, Esq.
   Wilson Petty Kosmo & Turner

17 550 West "C" Street
   Suite 1050

18 San Diego, California 92101

19 I sealed each envelope and, with the postage thereon fully prepaid, I placed each for deposit in the

20 United States Postal Service, this same day, at my business address shown above.

21       I declare under penalty of perjury under the laws of the State of California that the

22 foregoing is true and correct.

23

24       Executed at Del Mar, California, on December 21, 2001.

25

26                          *Ed de Jesus*

27               Ed deJesus

28

**Exhibit C**
**Page 83**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
330 W. Broadway, Dept. 72
San Diego, CA 92101
619-685-6027

TO:

CARL B. HILLIARD     #34270
1246 STRATFORD
DEL MAR, CA 92014

| | | |
|---|---|---|
| GIBB BROWER, et al. | | Case No.:  GIC765987 |
| | Plaintiff(s) | |
| | vs. | **NOTICE OF CASE REASSIGNMENT** |
| | | **DUE TO CHALLENGE, RECUSAL** |
| MOTOROLA INC | | **OR SPECIAL ASSIGNMENT** |
| | Defendant(s) | |

**COMPLAINT FILED** 04/19/01

EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED TO THE INDEPENDENT CALENDAR PROGRAM WITH JUDGE J. RICHARD HADEN, DEPARTMENT 72, 619-685-6027.

ALL SUBSEQUENT DOCUMENTS FILED IN THIS CASE MUST INCLUDE THE NAME OF THE NEW JUDGE AND THE DEPARTMENT NUMBER ON THE FIRST PAGE IMMEDIATELY BELOW THE NUMBER OF THE CASE. ALL COUNSEL AND PARTIES IN PRO PER ARE ADVISED THAT DIVISION II OF THE SUPERIOR COURT RULES IS STRICTLY ENFORCED. IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

UNLESS NOTIFIED OTHERWISE, ALL PENDING DATES ARE VACATED. PLEASE RESCHEDULE ANY CURRENTLY PENDING MOTIONS OR EX PARTE HEARINGS IN THE NEW DEPARTMENT.

## CERTIFICATE OF SERVICE

I, STEPHEN THUNBERG, certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego , California.

Dated: 12/19/01

STEPHEN THUNBERG _____ Clerk of the Superior Court
by LINDA CRAIG, Deputy Clerk

CARL B. HILLIARD (P)

**Exhibit C**
**Page 84**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Gibb Brower and Kim Brower,    )
                      )

    Plaintiffs,          )
                      )

v.                      )    Case No. _____
                      )

Motorola, Inc., a Delaware corporation;  )
U.S. West Wireless, LLC, a Colorado  )
corporation; U.S. West  )
Communications, Inc., a Colorado  )
corporation; Verizon Communications,  )
Inc., a New York corporation; GTE  )
Mobilnet of San Diego Incorporated, a  )
Delaware corporation; GTE Wireless  )
San Diego LLC, a California Limited  )
Liability Corporation; Sony Electronics  )
Inc., a Delaware corporation; Cellular  )
Telecommunications and Internet  )
Association, a District of Columbia  )
corporation; Cellular Carriers  )
Association of California, a California  )
corporation; and DOES 1 through 100,  )
inclusive,  )
                      )
    Defendants.

## CONSENT TO REMOVAL

The undersigned defendants--without waiving, and specifically reserving, all defenses,

objections, exceptions, and motions, including but not limited to lack of service, improper

service, lack of personal jurisdiction, improper venue, and the arbitrability of these

claims--consent to, authorize, and join in the removal of the captioned action from the Superior

Court of the State of California, County of San Diego to this Honorable Court.

[signature on next page]

**Exhibit D**
**Page 85**

Respectfully submitted,

_____

William T. Plybon, Esq.
Alston & Bird LLP

For Defendants Verizon Communications
Inc., "Verizon Wireless," GTE Corporation,
and GTE Mobilnet of San Diego
Incorporated.


GOODIN, MACBRIDE, SQUERI,
RITCHIE & DAY, LLP

By _____
Francine T. Radford
Attorneys for Defendant
Cellular Carriers Association of California

2707/029/X30599

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Gibb Brower and Kim Brower, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| Motorola, Inc., a Delaware corporation; | ) | |
| U.S. West Wireless, LLC, a Colorado | ) | |
| corporation; U.S. West | ) | |
| Communications, Inc., a Colorado | ) | |
| corporation; Verizon Communications, | ) | |
| Inc., a New York corporation; GTE | ) | |
| Mobilnet of San Diego Incorporated, a | ) | |
| Delaware corporation; GTE Wireless | ) | |
| San Diego LLC, a California Limited | ) | |
| Liability Corporation; Sony Electronics | ) | |
| Inc., a Delaware corporation; Cellular | ) | |
| Telecommunications and Internet | ) | |
| Association, a District of Columbia | ) | |
| corporation; Cellular Carriers | ) | |
| Association of California, a California | ) | |
| corporation; and DOES 1 through 100, | ) | |
| Inclusive, | ) | |
| | ) | |
| Defendants. | | |

## CONSENT TO REMOVAL

The undersigned defendants--without waiving, and specifically reserving, all defenses,

objections, exceptions, and motions, including but not limited to lack of service, improper

service, lack of personal jurisdiction, improper venue, and the arbitrability of these

claims--consent to, authorize, and join in the removal of the captioned action from the Superior

Court of the State of California, County of San Diego to this Honorable Court.

[signature on next page]

ATL01/11116763v1

Respectfully submitted,

Nancy L. Lipson
Counsel for Qwest Communications

For Defendants U.S. West Wireless, LLC,
and U.S. West Communications, Inc. N/K/A
Qwest Wireless, LLC and Qwest
Corporation

- 2 -

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Gibb Brower and Kim Brower, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| Motorola, Inc., a Delaware corporation; | ) | |
| U.S. West Wireless, LLC, a Colorado | ) | |
| corporation; U.S. West | ) | |
| Communications, Inc., a Colorado | ) | |
| corporation; Verizon Communications, | ) | |
| Inc., a New York corporation; GTE | ) | |
| Mobilnet of San Diego Incorporated, a | ) | |
| Delaware corporation; GTE Wireless | ) | |
| San Diego LLC, a California Limited | ) | |
| Liability Corporation; Sony Electronics | ) | |
| Inc., a Delaware corporation; Cellular | ) | |
| Telecommunications and Internet | ) | |
| Association, a District of Columbia | ) | |
| corporation; Cellular Carriers | ) | |
| Association of California, a California | ) | |
| corporation; and DOES 1 through 100, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT TO REMOVAL

The undersigned defendant--without waiving, and specifically reserving, all defenses, objections, exceptions, and motions, including but not limited to lack of service, improper service, lack of personal jurisdiction, improper venue, and the arbitrability of these claims--consents to, authorizes, and joins in the removal of the captioned action from the Superior Court of the State of California, County of San Diego to this Honorable Court.

Respectfully submitted,

_____
GTE Wireless San Diego, LLC

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **Gibb Brower and Kim Brower,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | Case No. _____ |
| | ) | |
| **Motorola, Inc., a Delaware corporation;** | ) | |
| **U.S. West Wireless, LLC, a Colorado** | ) | |
| **corporation; U.S. West** | ) | |
| **Communications, Inc., a Colorado** | ) | |
| **corporation; Verizon Communications,** | ) | |
| **Inc., a New York corporation; GTE** | ) | |
| **Mobilnet of San Diego Incorporated, a** | ) | |
| **Delaware corporation; GTE Wireless** | ) | |
| **San Diego LLC, a California Limited** | ) | |
| **Liability Corporation; Sony Electronics** | ) | |
| **Inc., a Delaware corporation; Cellular** | ) | |
| **Telecommunications and Internet** | ) | |
| **Association, a District of Columbia** | ) | |
| **corporation; Cellular Carriers** | ) | |
| **Association of California, a California** | ) | |
| **corporation; and DOES 1 through 100,** | ) | |
| **inclusive,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CONSENT TO REMOVAL

The undersigned defendants--without waiving, and specifically reserving, all defenses, objections, exceptions, and motions, including but not limited to lack of service, improper service, lack of personal jurisdiction, improper venue, and the arbitrability of these claims--consent to, authorize, and join in the removal of the captioned action from the Superior Court of the State of California, County of San Diego to this Honorable Court.

[signature on next page]

Respectfully submitted,

William T. Plybon, Esq.
Alston & Bird LLP

For Defendants Verizon Communications
Inc., "Verizon Wireless," GTE Corporation,
and GTE Mobilnet of San Diego
Incorporated.

- 2 -

**Exhibit D
Page 91**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Gibb Brower and Kim Brower, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| Motorola, Inc., a Delaware corporation; | ) | |
| U.S. West Wireless, LLC, a Colorado | ) | |
| corporation; U.S. West | ) | |
| Communications, Inc., a Colorado | ) | |
| corporation; Verizon Communications, | ) | |
| Inc., a New York corporation; GTE | ) | |
| Mobilnet of San Diego Incorporated, a | ) | |
| Delaware corporation; GTE Wireless | ) | |
| San Diego LLC, a California Limited | ) | |
| Liability Corporation; Sony Electronics | ) | |
| Inc., a Delaware corporation; Cellular | ) | |
| Telecommunications and Internet | ) | |
| Association, a District of Columbia | ) | |
| corporation; Cellular Carriers | ) | |
| Association of California, a California | ) | |
| corporation; and DOES 1 through 100, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT TO REMOVAL

The undersigned defendants -- without waiving, and specifically reserving all defenses,

objections, exceptions, and motions, including but not limited to lack of service, improper

service, lack of personal jurisdiction, improper venue, and the arbitrability of these claims --

consents to, authorizes, and joins in the removal of the captioned action from the Superior Court

of the State of California, County of San Diego to this Honorable Court.

[signature on next page]

**Exhibit D
Page 92**

Respectfully submitted,

Jameson B. Carroll

On behalf of Defendant American National
Standards Institute, Inc

OF COUNSEL
King & Spalding
191 Peachtree Street
Atlanta, Georgia 30303-1763

- 2 -

** TOTAL PAGE.04 **

Exhibit D
Page 93

Francis A. Citera
Greenberg Traurig, P.C.
77 West Wacker Drive, Suite 2500
Chicago, IL 60601
Tel. (312) 456-8400
Attorneys for Defendant Sony Electronics Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIBB BROWER and KIM BROWER, | ) Case No.: No. |
| | ) |
| Plaintiffs, | ) CONSENT TO REMOVAL |
| | ) |
| vs. | ) |
| | ) |
| MOTOROLA, INC., a Delaware Corporation, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

Defendant Sony Electronics Inc., without waiving, and specifically reserving, all defenses, objections, exceptions, and motions, including but not limited to lack of service, improper service, lack of personal jurisdiction, and the arbitrability of these claims, consents to, authorizes, and joins in the removal of the captioned action from the Superior Court of the State of California, County of San Diego to this Honorable Court.

Dated this 7th day of January, 2002

Francis A. Citera
Greenberg Traurig, P.C.
77 West Wacker Drive
Suite 250
Chicago, IL 60601
Tel. (312) 456-8400
Attorneys for Defendant Sony
Electronics Inc.

CONSENT   –   1

**Exhibit D**
**Page 94**

ORIGINAL

1   WRIGHT & L'ESTRANGE
     Robert C. Wright (051864)
2     John H. L'Estrange (049594)
   701 B Street, Suite 1550
3   San Diego, California 92101
   (619) 231-4844
4   (619) 231-6710 (facsimile)

5   Attorneys for Defendant Motorola, Inc.

**FILED**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY               DEPUTY

8           **UNITED STATES DISTRICT COURT**

9         **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  GIBB BROWER and KIM BROWER, | Case No. '02 CV 0056 K (JFS) |
| 11        Plaintiffs, | **CERTIFICATE OF SERVICE** |
| 12       vs. | |
| 13  MOTOROLA, INC., a Delaware corporation; | |
| 14  U.S. WEST WIRELESS, LLC, a Colorado Corporation; U.S. WEST | |
| 15  COMMUNICATIONS, INC., a Colorado corporation; VERIZON COMMUNICATIONS, | |
| 16  INC., a New York corporation; GTE MOBILNET OF SAN DIEGO | |
| 17  INCORPORATED, a Delaware corporation; GTE WIRELESS SAN DIEGO LLC, a | |
| 18  California Limited Liability corporation; SONY ELECTRONICS INC., a Delaware corporation; | |
| 19  CELLULAR TELECOMMUNICATIONS AND INTERNET ASSOCIATION, a District of | |
| 20  Columbia  corporation; CELLULAR CARRIERS ASSOCIATION OF CALIFORNIA, | |
| 21  a California corporation and DOES 1 through 100, inclusive, | |
| 22        Defendants. | |

24     I certify that I am over the age of 18 and not a party to the within action; I am employed in,

25  or am a resident of, the County of San Diego, California, where the mailing occurs; my business

26  address is 701 "B" Street, Suite 1550, San Diego, California 92101.

Case No. _____

1    I further declare that I am readily familiar with the business' practice for collection and

2    processing of correspondence for mailing with the United States Postal Service; and that the

3    correspondence shall be deposited with the United States Postal Service this same day in the ordinary

4    course of business.

5    I caused to be served the following document(s):

6    **1.     NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)**

7    **2.     CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL
            OF ACTION TO FEDERAL DISTRICT COURT** attaching NOTICE TO ADVERSE

8           PARTY OF REMOVAL OF ACTION TO FEDERAL DISTRICT COURT

9    **3.     CONSENT TO REMOVAL BY DEFENDANT GTE WIRELESS SAN DIEGO, LLC**

10   **4.     CONSENT TO REMOVAL BY DEFENDANT AMERICAN NATIONAL
            STANDARDS INSTITUTE, INC.**

11
     **5.     CONSENT TO REMOVAL BY DEFENDANTS U.S. WEST WIRELESS, LLC, AND**

12          **U.S. WEST COMMUNICATIONS, INC. N/K/A QWEST WIRELESS, LLC AND
            QWEST CORPORATION**

13
     **6.     CONSENT TO REMOVAL BY DEFENDANT SONY ELECTRONICS INC.**

14
     **7.      CONSENT TO REMOVAL BY DEFENDANTS VERIZON COMMUNICATIONS**

15          **INC., "VERIZON WIRELESS," GTE CORPORATION, AND GTE MOBILNET OF
            SAN DIEGO INCORPORATED**

16
     **8.     CONSENT TO REMOVAL BY DEFENDANT CELLULAR CARRIERS**

17          **ASSOCIATION OF CALIFORNIA**

18   by placing a copy of each document in a separate envelope addressed to each addressee, respectively,

19   as follows:

20
     Carl Hilliard, Esq.

21   1246 Stratford Court
     Del Mar, CA  92014

22

23   I then sealed each envelope and, with the postage thereon fully prepaid, I placed each for deposit in

24   the United States Postal Service, this same day, at my business address shown above, following

25   ordinary business practices.

26   . . . . .

27    . . . . .

28    . . . . .

2

Case No. _____

1    I declare under penalty of perjury that the foregoing is true and correct, and that I am

2  employed in the office of a member of the bar of this Court at whose direction this service was made.

3    Executed at San Diego, California, on January 9, 2002.

Connie Soto Aguilar

3

Case No. _____

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)*

FILED

**I (a) PLAINTIFFS**
GIBB BROWER and KIM BROWER

**DEFENDANTS**
MOTOROLA, INC., a Delaware corporation; U.S. WEST WIRELESS, LLC, a Colorado corporation, et al.

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Carl Hillard, Esq.
1246 Stratford Court
Del Mar, CA 92014

**ATTORNEYS (IF KNOWN)**
Robert C. Wright
WRIGHT & L'ESTRANGE
701 "B" Street, Suite 1550
San Diego, CA 92101

'02 CV 0056 K (JFS)

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question
  (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
(For Diversity Cases Only)   FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**
Removal jurisdiction under 28 U.S.C. sections 1331 and 1441 (Federal Question)

P1-rc

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | **PERSONAL INJURY** | **PERSONAL INJURY** | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 US1 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☒ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 90 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

- ☐ 1 Original Proceeding
- ☒ 2 Removal from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE                                    Docket Number

DATE   January 9, 2002

SIGNATURE OF ATTORNEY OF RECORD

# 07875-1  $150.0 BD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)